## CASE NO. 24-13756-C

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### KENNY BRINLEY

Appellant/Defendant

vs.

### JOSHUA HUBBERT

Appellee/Plaintiff.

Appeal from the United States District Court
For the Southern District of Florida

No.: 2:23-cv-14272-KMM

---

## **APPELLANT'S INITIAL BRIEF**

---

A. Hinda Klein, Esquire
Florida Bar No. 510815
Jesse Dyer, Esquire
Florida Bar No. 114593
Conroy Simberg
Attorney for Kenny Brinley
3440 Hollywood Boulevard, Second Floor
Hollywood, FL 33021
954 961-1400
954-967-8577
jdyer@conroysimberg.com

**NO. 24-13756-C**

**BRINLEY V. HUBBERT**

**<u>CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT</u>**

In accordance with Fed. App. P. 26.1 and 11th Cir. R. 26.1-1, undersigned counsel hereby certifies that the following individuals and entities have an interest in the outcome of this appeal:

Blaker, Jeffrey A. Esq.

Brinley, Kenny

Bryner, Robert

Dixon, Ricky

Hubbert, Joshua M.

Moore, K. Michael

St. Lucie County Florida

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant requests oral argument because this appeal involves the application of qualified immunity - a doctrine that the United States Supreme Court has emphasized is important to society as a whole - to a set of facts not addressed by this Court in any factually similar case. Specifically, the appeal addresses the application of qualified immunity to an Eighth Amendment deliberate-indifference claim where the prison inmate was injured at a worksite located off prison grounds by a county worker operating heavy equipment while he was working alongside the prisoner. Oral argument will assist this Court in thoroughly analyzing the important legal issues presented on appeal.

I

## **PREFACE**

Appellant, Kenny Brinley, will be referred to as "Brinley." Appellee, Joshua Hubbert, will be referred to as "Hubbert." References to the Record on Appeal will be by District Court Docket Entry number and page number: [Doc. # at ____].

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ................................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................ I

PREFACE.................................................................................................. II

TABLE OF CONTENTS ............................................................................ III

TABLE OF AUTHORITIES .......................................................... V

STATEMENT OF JURISDICTION ........................................................ VIII

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF THE CASE AND FACTS ................................................ 2

SUMMARY OF THE ARGUMENT ........................................................... 13

ARGUMENT ............................................................................................ 15

**I.   THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS DO NOT ESTABLISH THAT BRINLEY COMMITTED AN EIGHTH-AMENDMENT DELIBERATE INDIFFERENCE VIOLATION . 15**

    A.   Standard of Review .................................................................. 15

    B.   Merits........................................................................................ 16

**II.   THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY BECAUSE BRINLEY'S SPECIFIC CONDUCT, VIEWED ACCORDING TO THE SPECIFIC CIRCUMSTANCES OF HIS CASE, DID NOT VIOLATE CLEARLY ESTABLISHED LAW ........................... 24**

    A.   Standard Of Review.................................................................. 24

    B.   Qualified Immunity Generally.................................................... 24

    C.   Merits........................................................................................ 26

CONCLUSION ........................................................................................ 32

CERTIFICATE OF COMPLIANCE ........................................................... 34

CERTIFICATE OF SERVICE ................................................................... 35

IV

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986) ........................................................................... 16

<u>Blackston v. Shook & Fletcher Insulation Co.</u>,
764 F. 2d 1480 (11th Cir. 1985). ...................................................... 16

<u>Borden v. U.S.</u>,
593 U.S. 420 (2021) ......................................................................... 18

<u>Brooks v. Warden</u>,
800 F. 3d 1295 (11th Cir. 2015) ....................................................... 18

<u>Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.</u>,
492 U.S. 257 (1989) ......................................................................... 31

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986). ........................................................................ 15

<u>City and County of San Francisco, Calif. v. Sheehan</u>,
575 U.S. 600 (2015) .................................................................. 25, 26

<u>Corbitt v. Vickers</u>,
929 F. 3d 1304 (11th Cir. 2019) ................................................. 24, 29

<u>Crosby v. Paulk</u>,
187 F. 3d 1339 (11th Cir. 1999) ....................................................... 28

<u>Daniels v. Felton</u>,
823 Fed. Appx. 787 (11th Cir. 2020) .......................................... 18, 22

<u>Gaines v. Wardynski</u>,
871 F. 3d 1203 (11th Cir. 2017) ................................................. 27, 29

<u>Hall v. Flournoy</u>,
975 F. 3d 1269 (11th Cir. 2020) ................................................. VI, 25

<u>Hannah v. Armor Correctional Health Services, Inc.</u>,
792 Fed. Appx. 742 (11th Cir. 2019) ............................................... 28

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) .........................................................................25

Hope v. Pelzer,
    536 U.S. 730 (2002) .........................................................................31

Hudson v. Hall,
    231 F. 3d 1289 (11th Cir. 2000)........................................................27

Johnson v. Clifton,
    74 F. 3d 1087 (11th Cir. 1996)..........................................................24

Jones v. UPS Ground Freight,
    683 F. 3d 1283 (11th Cir. 2012)........................................................15

King v. Pridmore,
    961 F. 3d 1135 (11th Cir. 2020)...................................................27, 28

Kulkay v. Roy,
    847 F. 3d 637 (8th Cir. 2017)............................................................19

Lee v. Ferraro,
    284 F. 3d 1188 (11th Cir. 2002)........................................................25

Militello v. Sheriff of Broward Sheriff's Office,
    684 Fed. Appx. 809 (11th Cir. 2017)..................................................28

Ojeda v. Louisville Ladder, Inc.,
    410 Fed. Appx. 213 (11th Cir. 2010)..................................................16

Oliver v. Fuhrman,
    695 Fed Appx. 436 (11th Cir. 2017)...................................................30

Sanders v. Howze,
    177 F. 3d 1245 (11th Cir. 1999)........................................................25

Saunders v. Sheriff of Brevard County,
    735 Fed. Appx. 559 (11th Cir. 2018)..................................................25

Spencer v. Benison,
    5 F. 4th 1222 (11th Cir. 2021)...........................................................26

VI

Stalley v. Cumbie,
    2024 WL 5244627 (11th Cir. Dec. 30, 2024)....................................24

Swain v. Junior,
    961 F. 3d 1276 (11th Cir. 2020).......................................................16

Terrell v. Smith,
    668 F. 3d 1244 (11th Cir. 2012).......................................................28

Timbs v. Indiana,
    586 U.S. 146 (2019) .......................................................................31

Underwood v. City of Bessemer,
    11 F. 4th 1317 (11th Cir. 2021).................................................. 15, 24

Visage v. Woodall,
    798 Fed. Appx. 406 (11th Cir. 2020)............................. 17, 18, 19, 23

Wade v. McDade,
    106 F. 4th 1251 (11th Cir. 2024).............................. 16, 17, 18, 23, 24

White v. Pauly,
    580 U.S. 73 (2017) ............................................................. 26, 27, 29

**Statutes**
28 U.S.C. § 1291 .................................................................... VIII

28 U.S.C. § 1915(e)....................................................................3

42 U.S.C. § 1983 .......................................................................3

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction because this is an action for an alleged violation of a prisoner's Eighth Amendment protection against the infliction of cruel and unusual punishment under the United States Constitution. This is an appeal from an order denying a motion for final summary judgment based on qualified immunity. The order was entered on October 31, 2024, and the notice of appeal was timely filed on November 14, 2024. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review an order denying a motion for summary judgment based on qualified immunity. See Hall v. Flournoy, 975 F. 3d 1269 (11th Cir. 2020). The Court may consider not only the issue of whether the defendant violated clearly established law for purposes of qualified immunity, but also whether the defendant violated a constitutional right in the first place. Id. at 1277. In addition, this Court "may also consider factual questions that are inherently tied into such an evaluation." Id. at 1276. Ultimately, the Court has jurisdiction so long as the appeal does not solely raise issues of "pure" fact. Id.

## <u>STATEMENT OF THE ISSUES</u>

**I.    THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS DO NOT ESTABLISH THAT BRINLEY COMMITTED AN EIGHTH-AMENDMENT DELIBERATE INDIFFERENCE VIOLATION**

**II.   THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY BECAUSE BRINLEY'S SPECIFIC CONDUCT, VIEWED IN LIGHT OF THE SPECIFIC CIRCUMSTANCES OF HIS CASE, DID NOT VIOLATE CLEARLY ESTABLISHED LAW**

## STATEMENT OF THE CASE AND FACTS

### Introduction

This is an appeal from an interlocutory order denying Brinley's motion for final summary judgment on Hubbert's claim for violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. Hubbert's claim arises from an injury he sustained off prison grounds at a county worksite while performing prisoner labor for St. Lucie County, when Brinley allegedly dangerously operated a backhoe causing a large piece of concrete to strike him in the head. This Court must reverse the District Court's order because the undisputed material facts do not establish an Eighth Amendment violation and, even if they did, Brinley is protected from qualified immunity as an employee of St. Lucie County.

### Statement of Proceedings and Facts

Joshua Hubbert, a prison inmate incarcerated with the Florida Department of Corrections ("FDOC"), filed a complaint in the District Court seeking recovery for injuries he sustained while performing prisoner labor for St. Lucie County. [Doc. 10]. Hubbert alleged that Brinley, an employee of St. Lucie County's Environmental Resources Department, dangerously operated a backhoe at the worksite causing a piece of concrete to strike him in the head. [Doc. 10 at 3; Doc. 10-1 at 6].

2

After reviewing the complaint pursuant to the screening provisions of 28 U.S.C. § 1915(e),[1] the District Court permitted Hubbert's action to proceed against Brinley solely as an Eighth Amendment deliberate-indifference claim under 42 U.S.C. § 1983. [Doc. 11]. Brinley filed an answer in which he denied that he operated the backhoe in an unsafe manner, denied that Hubbert was ever injured, and raised qualified immunity as an affirmative defense. [Doc. 16].

Brinley moved for final summary judgment and filed a Statement of Undisputed Material Facts supported by his own affidavit and an affidavit executed by Brion Pauley who also is an employee of St. Lucie County. [Docs. 23, 24]. Brinley attached to his affidavit a copy of the contract between FDOC and St. Lucie County for the provision of inmate labor on county projects. [Doc. 24-1 at 5-24]. Hubbert filed a Response to Brinley's Statement of Undisputed Material Facts supported by his own affidavit and indicated those facts which he disputed and those he did not. [Doc. 27].

---

[1] A prisoner who is proceeding *in forma pauperis* is subject to the screening provisions set forth in 28 U.S.C. §1915(e), which requires the district court to dismiss a prisoner's civil action if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.

3

The following facts are undisputed for purposes of summary judgment. Pursuant to the contract, FDOC would provide inmate labor when St. Lucie County requested it. [Doc. 24 at 1-2; Doc. 27 at 1-2]. St. Lucie County would inform FDOC of the work that needed to be done, the location of the work site, and provide a schedule of work. [Doc. 24 at 1-2; Doc. 27 at 2; Doc. 24-1 at 7]. FDOC would then secure the necessary inmates and transport them to and from county work sites. [Doc. 24 at 1-2; Doc. 27 at 1-2; Doc. 24-1 at 7].

Inmates were divided into "work squads" each consisting of up to five inmates. [Doc. 24-1 at 5-6, 18]. The contract states that FDOC is responsible for "supervision" of the inmates and that FDOC must assign an officer to each work squad to supervise the squad. [Doc. 24 at 2; Doc. 27 at 1-2; Doc. 24-1 at 5-6, 18]. The contract further states FDOC is responsible for the apprehension of escaped inmates, the "handling of problem inmates" and "administering all disciplinary action taken against an inmate." [Doc. 24-1 at 7]. St. Lucie County agreed to provide supervision and guidance for projects that require a permit or which require technical assistance to complete the project. [Doc. 24-1 at 7].

As a general rule, St. Lucie County would not communicate directly with the inmates regarding performance of the work. [Doc. 24 at 2; Doc. 27

4

at 2]. Instead, at the work site, St. Lucie County employees would communicate the direction of work to the FDOC squad officer, who would then communicate the instructions to the inmates. [Doc. 24 at 2; Doc. 27 at 2]. However, because compliance with this general rule was not always practical, St. Lucie County employees would sometimes communicate directly with the inmates. [Doc. 27 at 2].

St. Lucie County would furnish work supplies to FDOC for use by the inmates including tools, work equipment and personal protective equipment. [Doc. 24 at 2; Doc. 27 at 2]. FDOC kept physical custody of these items. [Doc. 24 at 2; Doc. 27 at 2]. The contract states each FDOC squad officer is responsible for ensuring their squad is equipped with a first aid kit and personal protective equipment. [Doc. 24-1 at 16].

The FDOC was responsible for handling "[a]ny medical issues." [Doc. 27, pg. 4]. The contract states that FDOC provides medical treatment and transportation of injured inmates. [Doc. 24-1 at 7]. The contract also states that FDOC is responsible for food and drinks for inmate lunches. [Doc. 24-1 at 7].

St. Lucie County requested that FDOC provide inmate labor to assist in the demolition and removal of a three-bay metal storage shed on county property. [Doc. 24 at 3; Doc. 27 at 2]. The purpose of the project was to clear

5

space for the construction of a new office building and storage space for the St. Lucie County Environmental Resources Department. [Doc. 24 at 3; Doc. 27 at 2]. FDOC provided ten inmates for the project. [Doc. 24 at 3; Doc. 27 at 2].

The project consisted of two phases. In the first phase, inmates and St. Lucie County employees demolished and removed the shed itself. [Doc. 24 at 3-4; Doc. 27 at 2-3]. In the second phase, over a four-day period, they broke up and removed the concrete slab on which the shed was built using concrete saws, jackhammers and a backhoe. [Doc. 24 at 3-4; Doc. 27 at 2-3].  Once broken up, concrete pieces were placed in a dumpster to be hauled from the property. [Doc. 24 at 4; Doc. 27 at 3].

Hubbert was an inmate of FDOC incarcerated at Martin Correctional Institute in Indiantown, Florida. [Doc. 28 at 1-2]. FDOC assigned him to work on the project though he was never trained in demolition or safety procedures applicable to demolition projects. [Doc. 28. at 1-2]. Hubbert assisted in both the demolition of the shed and demolition of the concrete slab. [Doc. 28 at 2]. Hubbert states in his affidavit that, while he was on the job site, he was instructed by an unidentified person to assist in demolishing the concrete slab using a jackhammer and a concrete saw. [Doc. 28 at 2]. Hubbert states, however, that these tools were ineffective to break up "very large slabs" of

6

concrete which were laced with rebar and half-buried in the ground. [Doc. 28 at 2-3].

Brinley has been employed by St. Lucie County for seventeen years as a Natural Resource Management Specialist responsible for the management of land and property owned and managed by St. Lucie County. [Doc. 24-1 at 1]. Brinley worked with inmates to break up the concrete and, according to Hubbert, would directly communicate with inmates "when he wanted to." [Doc. 28 at 3]. Hubbert states that FDOC staff instructed him to follow Brinley's commands or he would be sent to confinement for refusing to work and disobeying a verbal order. [Doc. 28 at 3]. Hubbert stated in his affidavit that, at some point, they were having trouble breaking up one of the "very large" concrete slabs and Brinley decided to use the backhoe with "forks" attached to pry up and break the concrete. [Doc. 28 at 2]. Hubbert also stated that, at this time, there were not any FDOC officers present. [Doc. 28 at 2].

At the moment that he began using the backhoe to pry up the concrete, Brinley yelled "stand back." [Doc. 28 at 3-4]. Hubbert stated that Brinley did not explain what he meant by "stand back." [Doc. 28 at 4]. Brinley stated that "[w]hile prying the concrete slab the forks busted out through the concrete and chunks of concrete went flying through the air at a high rate of speed."

7

[Doc. 28 at 4]. Among these pieces of flying concrete was "[a] very large chunk, approximately 50 pounds, give or take a few pounds" which "was ejected and hit me in the back of the head and back, knocking me to the ground and injuring my shoulder." [Doc. 28 at 4]. Hubbert did not say in his affidavit how much time passed between the moment that Brinley yelled "stand back" to the moment he was hit by concrete.

In his affidavit, Brinley stated that inmates were directed to stay approximately 20 to 25 feet away while heavy equipment was in use to ensure the safety of all persons on the job site. [Doc. 24-1 at 3]. Hubbert's affidavit, on the other hand, is internally inconsistent on whether he was told where to stand. In paragraph 11, Hubbert states "I was never given instructions on where to stand or to stay a certain distance from where Kenneth Brinley was trying to pry the concrete out of the ground." [Doc. 28 at 2]. Contrarily, Hubbert states in paragraph 16 that "I was previously directed to stand exactly where I stood while Kenneth Brinley attempted to use the forks on the front-end loader as a demolition tool to break up the concrete slab, which was approximately 5-10 feet beside the front-end loader (backhoe}." [Doc. 28 at 3].

In his affidavit, Brinley stated that all inmates were provided personal protective equipment including hard hats, gloves, goggles, and reflective

8

vests. [Doc. 24-1 at 3]. Hubbert does not categorically deny being provided safety equipment. Instead, he stated that he was not issued a hard hat on the day of the accident and that he "was not instructed to wear safety equipment for this part of the process." [Doc. 28 at 3].

Finally, Brinley acknowledges that while it is "possible" that a small piece of spalled concrete may have been tipped off one of the larger pieces he was removing with the backhoe, "certainly no 50-pound pieces were ejected." [Doc. 24-1 at 3].

In his Motion, Brinley argued that Hubbert's Eighth Amendment deliberate-indifference claim fails as a matter of law because Brinley did not by his conduct create a substantial risk of serious harm and, even if he did, he was not subjectively aware of it. [Doc. 23]. Brinley argued that he did not act recklessly and that his conduct, at worst, amounted to ordinary negligence. [Doc. 23]. Alternatively, Brinley argued that, even if his conduct violated the Eighth Amendment, he is entitled to qualified immunity because Brinley could not reasonably have known based on then-existing law that his specific conduct violated the Eighth Amendment. [Doc. 23]. In other words, Brinley argued that he did not violate "clearly established law" as that term has been defined in qualified immunity jurisprudence. [Doc. 23].

In his Response to Brinley's Motion, Hubbert contended that Brinley's operation of heavy machinery to pry concrete and rebar-laced foundation out of the ground was reckless and created a substantial risk of serious harm. [Doc. 26 at 4]. Hubbert argued that he was not provided a hard hat and was not given safety instructions, guidance or training. [Doc. 26 at 5]. Hubbert argued Brinley failed to give advance warning that he was going to attempt to use the backhoe to break up the concrete, failed to ensure that Hubbert was a safe distance from the backhoe, and failed to ensure that he wore proper safety equipment. [Doc. 26 at 5-6]. Hubbert argued that the danger was increased because an FDOC officer was not present in violation of the contract and he was not permitted to walk away for his own safety. [Doc. 26 at 5-6]. Hubbert contended that, under the circumstances, the danger was obvious and Brinley was aware of sufficient facts to draw an inference that a substantial risk of serious harm existed. [Doc. 26 at 5-6]. Hubbert argued that Brinley recklessly refused to take actions to improve the obviously unsafe conditions, which resulted in his injury. [Doc. 26 at 6].

Hubbert argued qualified immunity is inapplicable because Brinley should have known from legal precedent that his conduct violated the Eighth Amendment. [Doc. 26 at 7-12]. In support of this contention, Hubbert did not rely on the text of the Eighth Amendment or any factually similar case law

10

construing the Eighth Amendment. Instead, he relied on case law setting forth the general principles underlying a deliberate-indifference claim and argued that Brinley's actions were so extremely reckless that he should have known they constituted an Eighth Amendment deliberate-indifference violation. [Doc. 26 at 7-12].

In his Reply, Brinley emphasized that even if Hubbert's version of events is accepted as true, Brinley's conduct did not create a substantial risk of serious harm under an objective standard. [Doc. 30 at 1-2]. Brinley argued that a substantial risk of harm only exists where the defendant's conduct creates a "strong likelihood" of injury and Brinley's conduct, at worst, created only a possibility of injury. [Doc. 30 at 1-2]. Brinley argued the failure to provide safety training and/or safety equipment constitutes ordinary negligence and cannot support a deliberate-indifference claim. [Doc. 30 at 3]. Brinley argued even if there was a substantial risk of serious harm, there was no evidence showing he had subjective knowledge of it. [Doc. 30 at 3-4]. In support, Brinley pointed out there were no instances of prior injuries though the project had been going on for days. [Doc. 30 at 3]. On the issue of qualified immunity, Brinley also pointed out that Hubbert did not cite one case that would have put Brinley on notice that the type of work being

performed could constitute a constitutional violation as opposed to mere negligence. [Doc. 30 at 4].

The District Court denied Brinley's Motion. [Doc. 32]. The Court reasoned that it was required to accept Hubbert's version of events as true and there were genuine issues of material fact because the evidence conflicted on whether Hubbert was supplied safety gear, whether Hubbert was instructed to stand at least 20 feet away from the backhoe as opposed to 5 to 10 feet, and whether the cement "exploded" causing fifty-pound chunks to fly through the air. [Doc. 32 at 9-10].

On the issue of qualified immunity, the District Court addressed the question of whether Brinley violated clearly established law generally, without analyzing the specific facts of the case, and without asking whether Brinley should have known from then-existing law that his specific conduct violated the Eighth Amendment. [Doc. 32 at 10-11]. The District Court found merely that "there was a clearly established constitutional right at the time of the alleged violation, namely, the right of a prisoner to be free from conditions of conferment, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." [Doc. 32 at 11]. This appeal followed. [Doc. 34].

## SUMMARY OF THE ARGUMENT

This Court must reverse the District Court's order denying Brinley's motion for final summary judgment because the undisputed material facts do not establish an Eighth Amendment deliberate-indifference claim for three reasons. First, Hubbert failed to present evidence supporting a finding that Brinley by his conduct created a substantial risk of serious injury. At worst, Hubbert established a mere possibility of injury. Second, even if Brinley created a substantial risk of serious injury, Hubbert failed to present evidence that Brinley was actually, subjectively aware of it when he was using the backhoe. Third, even if Brinley was subjectively aware of a substantial risk of serious injury, Brinley did not disregard that risk and he responded reasonably to it.

In addition, or alternatively, this Court must reverse with instructions for the entry of final summary judgment in favor of Brinley because even if there is sufficient evidence from which a reasonable jury could find an Eighth Amendment violation, Brinley is protected by qualified immunity because his specific conduct, viewed in light of the specific circumstances of this case, did not violate clearly established law. Neither Hubbert nor the District Court cited a single factually similar appellate case finding an Eighth Amendment violation and this is certainly not one of those rare cases where Eighth

13

Amendment principles apply with "obvious clarity" even in the absence of factually similar case law. For each of these reasons, this Court must reverse with instructions for the entry of final judgment in favor of Brinley.

## ARGUMENT

**I. THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE UNDISPUTED FACTS DO NOT ESTABLISH THAT BRINLEY COMMITTED AN EIGHTH-AMENDMENT DELIBERATE INDIFFERENCE VIOLATION**

### A. Standard of Review

This Court reviews the denial of a motion for summary judgment de novo. Underwood v. City of Bessemer, 11 F. 4th 1317, 1327 (11th Cir. 2021). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Id. A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Court views the evidence in the non-movant's favor, "but only to the extent that it would be reasonable for a jury to resolve the factual issues that way." Jones v. UPS Ground Freight, 683 F. 3d 1283, 1304 n.38 (11th Cir. 2012). The law limits the range of permissible inferences from ambiguous evidence, and "an inference based on speculation and conjecture is not reasonable." Blackston v. Shook & Fletcher Insulation Co.,

15

764 F. 2d 1480, 1482 (11th Cir. 1985). An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A conclusory allegation unsupported by specific facts within an affidavit does not have probative value. Ojeda v. Louisville Ladder, Inc., 410 Fed. Appx. 213, 215-16 (11th Cir. 2010).

### B.    Merits

The District Court permitted Hubbert's action to proceed solely as an Eighth Amendment deliberate-indifference claim. (Doc. 11). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to establish an Eighth Amendment deliberate-indifference claim, the prisoner must show (1) that the defendant by his conduct created a substantial risk of serious harm to the prisoner; (2) that the defendant was actually, subjectively aware of the substantial risk of serious harm that his conduct created; (3) that he disregarded the risk by failing to respond reasonably to it; and (4) as a result, the prisoner suffered a deprivation that was objectively, sufficiently serious. Wade v. McDade, 106 F. 4th 1251, 1256 (11th Cir. 2024) (en banc).

The deliberate-indifference standard sets a "high bar." Swain v. Junior, 961 F. 3d 1276, 1285 (11th Cir. 2020). Indeed, under the standard, neither

16

negligence nor gross negligence is sufficient. The deliberate-indifference standard requires a showing that is equivalent to "**criminal recklessness**." Wade, 106 F. 4th at 1261 (emphasis added). Criminal recklessness exists where a person consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards. Id. at 1261. A defendant fails to respond reasonably to a substantial risk of serious harm when, despite his knowledge, he does nothing to rectify the risk. Visage v. Woodall, 798 Fed. Appx. 406, 410 (11th Cir. 2020).

The requirement of actual knowledge of the risk is especially important because the Cruel and Unusual Punishments Clause by its terms regulates only the infliction of punishment. Wade, 106 F. 4th at 1259. The term "infliction of punishment" is defined as a "deliberate act intended to chastise or deter." Id. Absent a "particularized focus" on the defendant's subjective awareness of the risk created by his own conduct, there is a danger that he could be held liable for conduct that does not remotely resemble the infliction of punishment. Id. Indeed, the "whole point" of the subjective awareness requirement is to isolate those who inflict punishment within the meaning of the Eighth Amendment. Id.

Showing a substantial risk of serious harm requires the prisoner to provide evidence that there was a "strong likelihood" of his injury occurring.

17

Visage v. Woodall, 798 Fed. Appx. 406, 408 (11th Cir. 2020) (quoting Brooks v. Warden, 800 F. 3d 1295, 1301 (11th Cir. 2015)). The occurrence of the prisoner's injury, alone, is not enough to show a substantial risk of serious harm, nor is the mere possibility of injury. Id. In fact, the risk in question may have caused injury in the past, yet not be enough to prove a substantial risk existed. Id. at 409-10 (noting that the "occasional injury" is not enough to establish a substantial risk of serious harm). The circumstances creating the risk must be "extreme." Daniels v. Felton, 823 Fed. Appx. 787, 789 (11th Cir. 2020). The risk is measured objectively and must be of such a nature and degree that its disregard involves a "'gross deviation' from accepted standards." Wade, 106 F. 4th at 1261 (quoting Borden v. U.S., 593 U.S. 420, 427 (2021)).

The determination of whether a substantial risk of serious harm existed is a "prospective determination" which cannot be based on hindsight bias. Brooks v. Warden, 800 F. 3d 1295, 1301-02 (11th Cir. 2015). A risk calculation is based on events that have already occurred. Id. The mere fact that an event takes place does not indicate how likely it was to occur. Id. Also, "not all serious harm is precipitated by substantial risk; freak accidents do occur." Id.

In <u>Visage v. Woodall</u>, 798 Fed. Appx. 406 (11th Cir. 2020), an open window in the prison library slammed shut on a prisoner's hand causing injury. <u>Id.</u> at 409. The prison officials were aware that the windows were missing safety devices, there were no warning signs near the windows, the defendant did not warn the prisoner, and another inmate had previously reported an injury from a falling window. <u>Id.</u>

The prisoner brought suit alleging a deliberate-indifference claim under the Eighth Amendment. <u>Id.</u> at 408. The district court granted summary judgment for the prison officials and this Court affirmed on appeal. <u>Id.</u> This Court concluded that the prisoner failed to show that the windows presented a "strong likelihood" of injury for purposes of establishing a substantial risk of serious harm. <u>Id.</u> at 409. Alternatively, this Court found that even if the windows created a substantial risk of harm, the prisoner failed to present evidence that the prison officials had actual knowledge of it. <u>Id.</u> at 410.

A case from the Eighth Circuit, which also applies the criminal recklessness standard, is also instructive. In <u>Kulkay v. Roy</u>, 847 F. 3d 637 (8th Cir. 2017), prison officials assigned the prisoner to work in a prison workshop where other inmates had previously suffered injuries while using workshop equipment. <u>Id.</u> at 640, 643. There was a beam saw in the workshop that was designed to be used with plastic safety guards to protect

19

the operator from the blades, but the prison officials never installed the safety guards even though they knew it violated federal safety regulations and instead the safety guards sat unused in the workshop. Id. at 641. Prison officials directed the prisoner to use the beam saw without providing formal training. Id. After about a month of using the saw, the prisoner severed three of his fingers and part of a fourth. Id.

The district court dismissed the prisoner's complaint for failure to state an Eighth Amendment deliberate-indifference claim and the Court affirmed on appeal. Id. at 640. The Court reasoned that even if there was a substantial risk of serious harm, the prisoner's allegations did not show that the prison officials had actual knowledge of it. Id. at 644-45. The Court found that the awareness of similar injuries and the absence of safety equipment, procedures and/or training, amounted to ordinary negligence and could not support a deliberate-indifference claim. Id.

Here, on the undisputed record evidence, Hubbert has not sufficiently offered any facts suggesting a substantial risk of serious harm for purposes of the Eighth Amendment. The mere possibility of injury is not enough to show a substantial risk of harm; instead, Hubbert was required to present evidence showing a "strong likelihood" that his injury would occur. Yet, there is no evidence of any prisoner or other person being injured even though the

20

project occurred over several days and workers used other heavy equipment like jackhammers and concrete saws. Nor did Hubbert present evidence, such as a safety manual or expert evidence, that a recognized risk of using a backhoe to break up concrete is that 50-pound pieces of concrete are very likely to explode and fly through the air striking bystanders. For that matter, he did not present evidence that there is a risk of *any* heavy flying objects other than the fact of the accident itself. Yet, Hubbert cannot rely on hindsight bias to prove a substantial risk and the mere fact that the accident occurred, without more, is not sufficient to support a finding of a "strong likelihood" of injury. Brooks, 800 F. 3d at 1301-02. From the record evidence, a reasonable jury could conclude, at worst, that Brinley's operation of the backhoe created merely a possibility of injury or that this was a freak accident.

The District Court focused on the absence of safety gear and safety training. However, neither Hubbert nor the District Court cited case law standing for the proposition that the failure to provide safety equipment and/or training may support a finding of a violation of the Eighth Amendment. Instead, as in Kulkay, such a failure amounts to ordinary negligence at worst. It should also be noted that while it was St. Lucie County's responsibility to provide safety gear to FDOC, it is undisputed that the safety gear was ultimately kept in the custody of FDOC. There is no basis for faulting Brinley

21

for FDOC's failure and thereby holding him liable under the Eighth Amendment.

Even if Brinley by his conduct did create a substantial risk of serious harm, there is no record evidence on which a reasonable jury could find that Brinley had actual, subjective knowledge of it. Hubbert argued he demonstrated actual knowledge by presenting evidence that Brinley was aware of sufficient facts from which he could have drawn an inference of a substantial risk of harm. However, that is not the standard. Hubbert was required to present competent evidence not only that Brinley was aware of sufficient facts to draw the inference, but that he also "actually drew that inference." Daniels v. Felton, 823 Fed. Appx. 787, 789 (11th Cir. 2020). There are no facts supporting such a finding. Again, there is no evidence of any prior injuries, much less prior similar injuries. And while Brinley's warning of "stand back" indicates that Brinley was aware of some kind of risk, it does not show that he was aware that 50-pound pieces of concrete might fly through the air and certainly not a strong likelihood of it occurring. A jury could not, without engaging in speculation and conjecture, conclude that Brinley was actually, subjectively aware of the alleged substantial risk of harm even if it existed.

22

If the statement "stand back" proves anything, it is that Brinley was not deliberately *indifferent* to the safety of inmates, even if he was aware some kind of a risk might exist. By his statement, Brinley showed concern for the safety of the inmates. Indeed, in addition to warning inmates to "stand back" when he commenced attempting to break up the concrete, Brinley *also* told inmates to stay away 20 to 25 feet while heavy machinery is in use. Hubbert quibbles with the specific number of feet and states that, instead, he was only told to stand 5 to 10 feet from the backhoe. Yet, even if Hubbert's assertion is accepted as true, the fact remains that Brinley was not indifferent to the risk and he took measures to reduce it. This is not a situation where despite his knowledge, he did "nothing" to "rectify" the risk. Visage v. Woodall, 798 Fed. Appx. 406, 410 (11th Cir. 2020). Stated differently, there is no evidence that Brinley "consciously disregard[ed]" the risk "in gross deviation from accepted standards." Wade, 106 F. 4th at 1261. Even if Hubbert by his conduct created a substantial risk of serious harm, and even if he was subjectively aware of it, he did not disregard it and responded reasonably to it. For that reason alone, final summary judgment should have been granted.

In conclusion, at worst, Brinley acted with ordinary negligence when he operated the backhoe as he did. Certainly, Hubbert did not present any

23

record evidence sufficient to support a finding of **criminal recklessness**, and Brinley's conduct "does not remotely resemble the 'infliction' of 'punishment.'" Wade, 106 F. 4th at 1259. This Court must reverse with instructions for the District Court to enter final summary judgment in favor of Brinley.

## II.  THE DISTRICT COURT ERRED IN DENYING BRINLEY'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY BECAUSE BRINLEY'S SPECIFIC CONDUCT, VIEWED ACCORDING TO THE SPECIFIC CIRCUMSTANCES OF HIS CASE, DID NOT VIOLATE CLEARLY ESTABLISHED LAW

### A.  Standard Of Review

The denial of a motion for summary judgment based on qualified immunity is reviewed de novo. Underwood, 11 F. 4th at 1327. Likewise, the District Court's ruling that a public official's conduct violated clearly established law so that the official is not entitled to qualified immunity is reviewed de novo. Johnson v. Clifton, 74 F. 3d 1087, 1090 (11th Cir. 1996).

### B.  Qualified Immunity Generally

Qualified immunity is a doctrine that shields government employees performing discretionary functions from civil liability insofar as their conduct does not violate "**clearly established** statutory or constitutional rights." Stalley v. Cumbie, 2024 WL 5244627, at *8 (11th Cir. Dec. 30, 2024) (quoting Corbitt v. Vickers, 929 F. 3d 1304, 1311 (11th Cir. 2019) (emphasis added)).

24

To overcome the doctrine, the burden is on the plaintiff to prove (1) that the defendant violated his constitutional rights, and (2) at the time of the violation, those rights were clearly established in light of the specific context of the case, not as a broad general proposition. Id.

The doctrine is difficult to defeat and has been described by this Court as a "muscular doctrine." Saunders v. Sheriff of Brevard County, 735 Fed. Appx. 559 (11th Cir. 2018). It applies in "all but exceptional cases," and this Court has cautioned that "courts should think long and hard before stripping defendants of immunity." Sanders v. Howze, 177 F. 3d 1245, 1249 (11th Cir. 1999).

The purpose of qualified immunity is to allow government employees to carry out their discretionary duties without the fear of personal liability or harassing litigation. Hall v. Flournoy, 975 F. 3d 1269, 1275 (11th Cir. 2020) (quoting Lee v. Ferraro, 284 F. 3d 1188, 1194 (11th Cir. 2002)). It protects government employees from the costs of trial and the burdens of broad-reaching discovery. Id. at 1274-75. The Supreme Court has observed that it "often" reverses lower courts who deny qualified immunity. City and County of San Francisco, Calif. v. Sheehan, 575 U.S. 600, 621 n.3 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982)). The Supreme Court has explained that it has been necessary to reverse so often because qualified

25

immunity is "important to society as a whole" and the immunity is effectively lost if a case is erroneously permitted to go to trial. <u>White v. Pauly</u>, 580 U.S. 73, 551-52 (2017) (citing <u>Sheehan</u>, 575 U.S. at 621 n.3).

### C.    Merits

It is undisputed that Brinley was acting within his discretionary authority at the time of the accident. A government official acts within his discretionary authority when he is pursuing a job-related goal through means that were within his power to utilize. <u>Spencer v. Benison</u>, 5 F. 4th 1222, 1231 (11th Cir. 2021). In evaluating discretionary authority, the court looks to the "general nature" of the defendant's action without regard to the alleged illegal conduct. <u>Id.</u> Here, the accident occurred on land owned by St. Lucie County and Brinley is a natural resource management specialist responsible for the management of land and property owned by St. Lucie County. At the time of the accident, he was operating the backhoe as part of the project to clear space for the eventual construction of administrative offices and equipment storage for the St. Lucie County Environmental Resource Department.

The burden is on Hubbert, as the plaintiff, to prove that Brinley violated the Eighth Amendment and that, at the time of the violation, the right was "clearly established **in light of the specific context of the case**, not as a broad general proposition." <u>Gaines v. Wardynski</u>, 871 F. 3d 1203, 1208 (11th

26

Cir. 2017) (emphasis added). The Supreme Court has emphasized the importance of this requirement, stating:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.
>
> Today, it is again necessary to reiterate the longstanding principle that **"clearly established law" should not be defined at a high level of generality**. As this Court explained decades ago, the **clearly established law must be "particularized" to the facts of the case**. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

Id. at 1207 (quoting White v. Pauly, 580 U.S. 73, 79 (2017) (emphasis added).

The right must be clearly established under the law that existed at the time of the alleged violation. King v. Pridmore, 961 F. 3d 1135, 1145 (11th Cir. 2020). For the law to be clearly established to the point that qualified immunity does not protect a government official, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. (quoting Hudson v. Hall, 231 F. 3d 1289, 1294 (11th Cir. 2000)). The

government employee is given the benefit of the doubt, provided that the conduct was not "**so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed the acts**." Id. (quoting Crosby v. Paulk, 187 F. 3d 1339, 1344-45 (11th Cir. 1999) (emphasis added)).

A plaintiff can show that a right is clearly established in one of three ways. First, the plaintiff can show that a materially similar case has already been decided. Id. (quoting Terrell v. Smith, 668 F. 3d 1244, 1255-56 (11th Cir. 2012). Second, the plaintiff can point to a broader, clearly established principle that should control the novel facts of the situation. Id. For the first and second method, the right can only be clearly established by decisions of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose. Hannah v. Armor Correctional Health Services, Inc., 792 Fed. Appx. 742, 744 (11th Cir. 2019).[2] Third, the plaintiff can show that the conduct at issue so obviously violates the constitution that prior case law is unnecessary. King, 961 F. 3d at 1146.

---

[2] A district court opinion, of course, cannot create clearly established precedent. Militello v. Sheriff of Broward Sheriff's Office, 684 Fed. Appx. 809, 815 n.8 (11th Cir. 2017).

The second and third methods are known as "obvious clarity cases." Id. (quoting Gaines v. Wardynski, 871 F. 3d 1203, 1209 (11th Cir. 2017). They exist where the words of the federal statute or constitutional provision at issue are "so clear and the conduct so bad" that case law is not needed to establish that the conduct cannot be lawful, or where the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted. Id. Cases that fall under this narrow exception are **rare** and do not arise often. Id. In light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate. Id. (quoting Corbitt, 929 F. 3d at 1312 ("Notwithstanding the availability of the obvious clarity exceptions, this Court has observed on several occasions that 'if case law, in factual terms, has not staked out a bright line, qualified immunity **almost always** protects the defendant.'") (emphasis added).

The District Court in denying qualified immunity committed the very error that the Supreme Court explicitly and emphatically warned against in White v. Pauly, 580 U.S. 73 (2017), namely, that "'clearly established law' should not be defined at a high level of generality" but rather must be

29

"'particularized' to the facts of the case." Id. at 79. In finding that Brinley violated clearly established law, the District Court considered then-existing law only at a very general level, finding that Hubbert had "the right of a prisoner to be free from conditions of conferment, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." [Doc. 32 at 11]. The District Court did not in any way analyze whether it would have been obvious to Brinley that **his specific conduct**, under the circumstances, violated the Eighth Amendment.

Nor did Hubbert attempt to cite a single case that is factually similar and, indeed, there are no such cases. Instead, Hubbert proceeded on the theory that clearly established Eighth Amendment principles apply with "obvious clarity" because it is well established that prison work assignments are conditions of confinement subject to Eighth Amendment scrutiny. Yet, this Court has said that even "harsh" conditions do not violate the Eighth Amendment and that the conditions of confinement must be "extreme" and pose an unreasonable risk of serious injury to the prisoner's health and safety. Oliver v. Fuhrman, 695 Fed Appx. 436, 437-38 (11th Cir. 2017).

Even if Hubbert's version of events is accepted as true, Hubbert could not possibly have known as he operated the backhoe that he was violating Hubbert's right to be free from conditions of confinement amounting to cruel

30

and unusual punishment. There is no evidence that Brinley had any desire or intention to inflict punishment at all. The evidence shows that Brinley was simply doing his job and attempting to break up the concrete. This is not a case, for example, where the defendant deliberately and wantonly caused harm to the inmate at the worksite by handcuffing him to a hitching post at shoulder height for seven hours without a shirt on in the hot sun with the handcuffs cutting into his wrists, his arms losing circulation, and the defendant taunting him about his thirst, merely because he was disruptive during work, as in Hope v. Pelzer, 536 U.S. 730, 730 (2002) (reversing this Court's decision affirming summary judgment for prison guard based on qualified immunity).

Indeed, it is not clear that the Eighth Amendment could apply *at all* to Brinley, even if he had *intended* to strike Hubbert with the concrete. The Eighth Amendment applies to "those entrusted with the criminal-law function of government." Timbs v. Indiana, 586 U.S. 146, 151 (2019) (quoting Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 263 (1989)). Brinley is employed by St. Lucie County's Environmental Resources Department and at the time was working alongside Hubbert to clear land for the County. Brinley is not a prison official. It would require a massive stretch to find, on the record evidence, that FDOC had entrusted

Brinley with the criminal-law function of government. Certainly, there is no Supreme Court or Eleventh Circuit case law clearly compelling such a conclusion.

In conclusion, this is not one of those rare cases where Eighth Amendment principles apply with "obvious clarity" despite the absence of factually similar appellate case law. It cannot reasonably be maintained that Brinley engaged in conduct so obviously illegal that only an official who was incompetent or who knowingly was violating the Eighth Amendment would have committed the acts. Therefore, even if Brinley violated the Eighth Amendment, this Court must nevertheless reverse and instruct the District Court to enter final summary judgment for Brinley because he did not violate clearly established law and he is protected by qualified immunity.

## <u>CONCLUSION</u>

This Court must reverse the District Court's order denying Brinley's motion for final summary judgment, and remand with instructions for the District Court to enter final summary judgment in favor of Brinley, for two reasons: 1) the undisputed material facts do not establish a claim for deliberate-indifference under the Eighth Amendment; and 2) even if the undisputed material facts do establish an Eighth Amendment violation, Brinley is entitled to qualified immunity because his specific conduct, viewed

32

according to the specific circumstances of the case, did not violate clearly

established law.

Date: January 27, 2025

Jesse Dyer, Esquire
Conroy Simberg, P.A.

A. Hinda Klein, Esquire
Florida Bar No. 510815
Jesse Dyer, Esquire
Florida Bar No. 114593
Conroy Simberg
3440 Hollywood Boulevard, Second Floor
Hollywood, FL 33021

Attorney for Appellant Kenny Brinley

By: /s/   *Jesse Dyer*
A. Hinda Klein, Esquire
Florida Bar No. 510815
Jesse Dyer, Esquire
Florida Bar No. 114593

33

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of FRAP 32(a)(7) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 7,125 words.

By: /s/    *Jesse Dyer*
                     B. Hinda Klein, Esquire
                     Florida Bar No. 510815
                     Jesse Dyer, Esquire
                     Florida Bar No. 114593

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this document was filed through the ECF system and a copy hereof has been furnished to Samuel Weiss, Rights Behind Bars, 1800 M Street Front 1, #33821, Washington DC, 20033, Counsel for Appellee, sam@rightsbehindbars.org on this 27th day of January, 2025.

CONROY SIMBERG
Attorney for Kenny Brinley
3440 Hollywood Boulevard, Second Floor
Hollywood, FL 33021
Telephone:  954 961-1400
Facsimile:  954-967-8577
Primary Email:  jdyer@conroysimberg.com
Secondary Email:
eservicehwd@conroysimberg.com


By:  /s/ *Jesse Dyer*

A. Hinda Klein, Esquire
FLorida Bar No. 510815
Jesse Dyer, Esquire
Florida Bar No. 114593

35