No. 24-13756

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JOSHUA HUBBERT,

*Plaintiff-Appellee,*

*v.*

KENNY BRINLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Florida

## PLAINTIFF-APPELLEE JOSHUA HUBBERT'S
## RESPONSE BRIEF

Danielle Hamilton
Nicolas Martinez
Luke Beasley
Jonathan Decker*
Matthew Johnson*
CJ Miller*
Carter G. Phillips Center for Supreme
Court and Appellate Advocacy
Northwestern Pritzker School of Law
375 E. Chicago Avenue, 8th Floor
Chicago, IL 60611
(312) 503-1486
danielle.hamilton@law.northwestern.edu

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

* Law student appearing pursuant to
Circuit Rule 46-11

*Hubbert v. Brinley*, No. 24-13756

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

In accordance with Circuit Rule 26.1-1, the undersigned counsel of record certifies that the following list of persons and entities have an interest in the outcome of this case:

Barron, First Name Unknown (FDOC)

Beasley, Luke (Northwestern Pritzker School of Law)

Blaker, Jeffrey (Conroy Simberg)

Brinley, Kenny (St. Lucie County)

Bryner, Robert (FDOC)

Centurion Health Services

Conroy Simberg

Decker, Jonathan (Northwestern Pritzker School of Law)

Dixon, Ricky (FDOC)

Dyer, Jesse (Conroy Simberg)

Hamilton, Danielle (Northwestern Pritzker School of Law)

Hubbert, Joshua

Johnson, Matthew (Northwestern Pritzker School of Law)

Klein, A. Hinda (Conroy Simberg)

Martinez, Nicolas (Northwestern Pritzker School of Law)

*Hubbert v. Brinley*, No. 24-13756

Miller, CJ (Northwestern Pritzker School of Law)

Moore, K. Michael, U.S. District Judge

Northwestern Pritzker School of Law

Rights Behind Bars

St. Lucie County, Florida

Weiss, Samuel (Rights Behind Bars)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ Danielle Hamilton

C-2

## STATEMENT REQUESTING ORAL ARGUMENT

Plaintiff-Appellee Joshua Hubbert respectfully requests oral argument because it will assist this Court in resolving the important issues raised by this appeal. First, the Court should have the benefit of oral argument because this case deals with complex jurisdictional issues in interlocutory appeals of the denial of qualified immunity. Second, oral argument would allow the Court to better grasp the relevant facts as alleged in Mr. Hubbert's pro se pleadings. Lastly, counsel in this case are serving pro bono as a service to the community and as a pedagogical tool for clinical law students working under the supervision of practicing civil rights attorneys. With the Court's indulgence, oral argument presents a valuable opportunity for third-year law students to practice advocacy on behalf of a client.

## JURISDICTIONAL STATEMENT

Brinley's jurisdictional statement is incomplete and incorrect. As discussed in more detail below, this Court lacks jurisdiction. This Court recognizes a narrow exception to the final judgment rule allows interlocutory appeals challenging denials of summary judgment based on qualified immunity. But this Court lacks interlocutory jurisdiction to review the denial of summary judgment "where the only issues appealed are evidentiary sufficiency issues." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996).

Here, Brinley challenges the district court's well-reasoned determination that several genuine disputes of material fact as to whether Brinley violated Hubbert's clearly established rights under the Eighth Amendment remain, precluding summary judgment. Importantly, Brinley does not challenge any issues of law. Instead, he disputes only factual issues, namely whether his conduct violated Hubbert's clearly established rights viewing the record in the light most favorable to him. Because Brinley's appeal turns on "evidentiary sufficiency issues" that the Court may not review at this stage, the Court should dismiss this appeal for lack of jurisdiction.

# TABLE OF CONTENTS

Certificate of Interested Parties and Corporate Disclosure
 Statement ........................................................................ 1

Statement Requesting Oral Argument ......................................... i

Jurisdictional Statement ............................................................ ii

Table of Authorities ................................................................. vi

Introduction ............................................................................ 1

Statement of the Issues ............................................................. 2

Statement of the Case ............................................................... 3

    I.     Factual Background ..................................................... 3

        A.    Hubbert is incarcerated at the Martin
 Correctional Facility. ......................................... 3

        B.    St. Lucie County places inmates on a demolition
 project. ............................................................. 3

        C.    While supervising the inmates, Brinley
 demolishes a steel-reinforced concrete slab with a
 backhoe, causing a fifty-pound piece of concrete to
 hit Hubbert. ...................................................... 4

    II.    Procedural History ...................................................... 5

Summary of the Argument ......................................................... 6

Argument ................................................................................. 9

    I.     The Court lacks jurisdiction to review Brinley's
 interlocutory appeal based only on factual disputes. ............. 9

        A.    Jurisdiction over interlocutory appeals is narrow. ....... 9

B.    Brinley's interlocutory appeal turns solely on factual disputes. ............................................. 10

C.    Brinley raises no legal issues on appeal. ..................... 12

II.    If the Court has jurisdiction, it should affirm the district court's denial of Brinley's motion for summary judgment on the basis of qualified immunity ...................... 16

A.    The Court should take the facts assumed by the district court in its analysis. ......................................... 16

B.    A reasonable jury could find Brinley violated Hubbert's Eighth Amendment right to safe working conditions. ........................................................ 18

1.    A reasonable jury could find a substantial risk of serious harm was present when untrained, unequipped inmates were ordered to stand within ten feet of the demolition of a two-hundred-and-fifty-pound concrete slab. ............................................. 20

2.    A reasonable jury could find Brinley was deliberately indifferent to the harm. .................. 25

3.    A reasonable jury could find Brinley caused the harm. ........................................................... 29

C.    Hubbert's right was clearly established. ..................... 30

1.    Fundamentally similar cases clearly established Hubbert's right. ................................ 32

2.    Conditions of confinement principles clearly established Hubbert's right. ................................ 36

3.    Brinley's conduct was egregious. ........................ 38

Conclusion ................................................................................. 39

iv

Certificate of Compliance ........................................................... 41

Certificate of Service ................................................................. 42

# TABLE OF AUTHORITIES

## Cases

*Ambrose v. Young*, 474 F.3d 1070 (8th Cir. 2007) ................................... 34

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................... 30, 32, 36

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................................................. 30

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ........................................... 9, 12

*Berry v. Bunnell*, 39 F.3d 1056 (9th Cir. 1994) ....................................... 35

*Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) ......... 19, 22, 23, 29, 37

*Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009) ............................. 10, 12

*Buckley v. Barbour Cnty., Ala.*, 624 F. Supp. 2d 1335 (M.D. Ala. 2008) ................................................................................................ 33

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014) ............................................................................................ 19, 33

*Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313 (11th Cir. 2005) ...... 17

*Cooper v. Smith*, 89 F.3d 761 (11th Cir. 1996) ....................................... 17

*Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996) ............................ ii, 10

*Depree v. Thomas*, 946 F.2d 784 (11th Cir. 1991) ................................. 15

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................. 19, 37

*Farmer v. Brennan*, 511 U.S. 825

   (1994) ................................................. 8, 14, 19, 25, 27, 32, 33, 36, 37, 38

*Fleming v. United States*, 127 F.4th 837 (11th Cir. 2025) ..................... 18

*Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) .......... 18

*Gilkerson v. Worthey*, 2008 WL 4194812 (N.D. Fla. Sept. 10,

   2008) ........................................................................................ 8, 33, 37

*Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987) ..................................... 20, 34

*Hall v. Bennett*, 379 F.3d 462 (7th Cir. 2004) ......................................... 34

*Hall v. Flournoy*, 975 F.3d 1269 (11th Cir. 2020) ............................. 10, 18

*Helling v. McKinney*, 509 U.S. 25 (1993) ................................................ 19

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................... 27

*Howard v. King*, 707 F.2d 215 (5th Cir. 1983) ........................................ 34

*Hudson v. Palmer*, 468 U.S. 517 (1984) .................................................. 37

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*

   *v. Zantop Air Transp. Corp.*, 394 F.2d 36 (6th Cir. 1968) .................. 21

*Johnson v. Calloway*, 2017 WL 712635 (M.D. Ala. Feb. 3, 2017) .......... 38

*Johnson v. Jones*, 515 U.S. 304 (1995) ................................................. 9, 10

*Lewis v. City of West Palm Beach*, 561 F.3d 1288, (11th Cir.

   2009) ..................................................................................... 8, 31, 32, 36, 38

*May v. Hetzel*, 630 Fed. Appx. 994 (11th Cir. 2015) ..............................37

*Melendez v. Sec'y of Dep't of Corr.*, 2024 WL 3880013 (11th Cir. Aug. 20, 2024) ...................................................................................7, 10, 13

*Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)......14, 31, 32

*Mitchell v. City of Jacksonville, Fla.*, 734 F. App'x 649 (11th Cir. 2018) ...................................................................................17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................9, 12

*Nelson v. Tompkins*, 89 F.4th 1289 (11th Cir. 2024) .............................20

*Ort v. White*, 813 F.2d 318 (11th Cir. 1987)......................................19, 38

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...............................................16

*Rhodes v. Michigan*, 10 F.4th 665 (6th Cir. 2021) ..................................34

*Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611 (11th Cir. 2007) .....27

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014)..15

*Smith v. Thomas*, 2013 WL 800697 (M.D. Ala., March 4, 2013)......20, 34

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) ........................35

*Stanley v. City of Dalton, Ga.*, 219 F.3d 1280 (11th Cir. 2000)..16, 17, 18

*Taylor v. Riojas*, 592 U.S. 7 (2020)..........................................................38

*Timbs v. Indiana*, 586 U.S. 146 (2019) ...................................................15

*Tolan v. Cotton*, 572 U.S. 650 (2014) ......................................................33

*Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) ................................25

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .......................................................35

## Rules

Fed. R. Evid. 201(b) ...................................................................................21

## Treatises

Wayne LaFave, *Substantive Criminal Law* § 5.4(f) (3d ed.) ..................24

## Regulations

29 C.F.R. § 1926.100(a) ............................................................................22

## INTRODUCTION

Nearly six years ago, Joshua Hubbert was ordered to work on a demolition project while incarcerated at Martin Correctional Institution in Martin County, Florida. If Hubbert had refused this order, or any order while working on this dangerous project, he would have been sent to confinement.

One day, Kenny Brinley, a county supervisor, was using heavy machinery to demolish slabs of concrete. Without giving Hubbert any safety training or protection, Brinley caused Hubbert to be struck in the head and back by fifty pounds of concrete. Hubbert was critically injured. He still suffers from neurological damage.

When Brinley, demolished a two-hundred-and-fifty-pound concrete slab while Hubbert stood nearby with no protection, he acted recklessly, with no regard for Hubbert's safety. Accordingly, the district court denied Brinley's motion for summary judgment. The court gave a detailed opinion explaining its finding that genuine issues of material fact remained as to whether Brinley's actions violated Hubbert's clearly established Eighth Amendment right to safe working conditions. Brinley's interlocutory appeal is unjustified, raising only factual issues

1

that deprive this Court jurisdiction. In the alternative, this Court should affirm the district court's denial of summary judgment based on qualified immunity.

## STATEMENT OF THE ISSUES

1. Does this Court lack jurisdiction to consider Brinley's qualified immunity interlocutory appeal when he raises no legal issues and only factual issues?

2. If this Court has jurisdiction, was Hubbert's Eighth Amendment right to safe working conditions violated when Brinley caused a fifty-pound slab of concrete to strike and injure Hubbert, who Brinley did not provide any safety training, equipment, or instructions to?

3. If this Court has jurisdiction, at the time of Brinley's conduct, was Hubbert's Eighth Amendment right to safe working conditions clearly established?

## STATEMENT OF THE CASE

### I.    Factual Background

#### A.    Hubbert is incarcerated at the Martin Correctional Facility.

Plaintiff-Appellee Joshua Hubbert was incarcerated at Martin
Correctional Facility within the Florida Department of Corrections
(FDOC). Doc. 32 at 8. Hubbert now resides at a work release center in
Florida. During Hubbert's incarceration at Martin, FDOC contracted
with St. Lucie County to provide inmate labor for construction projects.
*Id.*

#### B.    St. Lucie County places inmates on a demolition project.

In 2019, St. Lucie County sought inmate labor to demolish a shed
on county property. Doc. 32 at 7. Hubbert and other inmates were
assigned to break up and remove concrete from the premises in a four-
day project. *Id.* St. Lucie County was responsible for providing tools and
equipment to inmates. Doc. 24 at 2. St. Lucie County was responsible
for ensuring inmates were equipped with personal protective
equipment, which FDOC would keep physical custody of. *Id.*

Hubbert was neither issued a hard hat nor instructed to wear any
other safety equipment the day of his injury. *Id.* at 2, 8. Hubbert was

3

not trained in demolition or applicable safety procedures, despite being compelled to use saws and jackhammers on the concrete. *Id.* at 8. If Hubbert refused work orders, he would be sent to confinement. *Id.* at 7.

### C. While supervising the inmates, Brinley demolishes a steel-reinforced concrete slab with a backhoe, causing a fifty-pound piece of concrete to hit Hubbert.

On September 23, 2019, FDOC officers instructed Hubbert to follow the orders of Defendant-Appellant Kenneth Brinley, a St. Lucie County employee. Six inmates working on the property demolition encountered a massive slab of concrete they could not lift. *Id.* at 8. Brinley decided to use a backhoe with a fork attachment as a demolition tool to tear up the large concrete slabs. *Id.* at 7. The concrete was reinforced with steel bars. *Id.* at 8. Hubbert was previously instructed to stand five to ten feet from the backhoe. *Id.* Brinley disputes this fact, claiming that inmates were told to stand 20 to 25 feet away. *Id.*

Brinley wedged the backhoe's forklift under the concrete slab and five large pieces of concrete broke apart and flew through the air. *Id.* Each piece weighed approximately fifty pounds. *Id.* at 2. One of the fifty-pound pieces hit Hubbert in the head and back. *Id.*

4

Hubbert was severely injured in the head, knees, and left shoulder. *Id.* The concrete left lasting injuries, including a depression in Hubbert's skull, a scar across his shoulder, and muscular problems that persist to this day. Doc. 28 at 4.

## II.  Procedural History

On August 28, 2023, Hubbert, acting pro se, sued Brinley, Centurion Health Services, and three FDOC defendants in the Southern District of Florida alleging they violated his Eighth Amendment right to safe working conditions. Original Complaint, Doc. 5; Amendment Complaint, Doc. 10. On February 12, 2024, the district court screened Hubbert's amended complaint pursuant to 28 U.S.C. § 1915(e) and determined he alleged sufficient facts to support his Eighth Amendment claim against Brinley. Doc. 11. On May 13, 2024, Brinley moved for summary judgment, arguing the record did not support a finding of deliberate indifference and asserting qualified immunity. Doc. 23.

On October 31, 2024, the district court denied Brinley's motion on both bases. Doc. 32. The district court found that the record—when viewed in light most favorable to Hubbert—could support a jury finding

5

that Brinley violated Hubbert's clearly established Eighth Amendment right to safe working conditions and was therefore not entitled to qualified immunity. *Id.* at 10–11. On the first prong of qualified immunity, the district court found the factual disputes concerning whether the inmates were provided protective gear, where Brinley told the inmates to stand, and to what degree the concrete slab exploded could support a finding that Brinley was deliberately indifferent to a substantial risk of serious harm to Hubbert. *Id.* at 9–10. On the second prong, the court found that several cases in this Circuit clearly established a right to safe working conditions, which were enough to put Brinley on notice that his conduct was unconstitutional. *Id.* at 6, 11. Brinley timely appealed. Doc. 34.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction to consider Brinley's interlocutory appeal because he only challenges the district court's finding of sufficient evidence to support a jury finding that he violated Hubbert's constitutional rights. The Court cannot consider this purely factual issue in an interlocutory appeal.

6

Brinley attempts to "dress [his] arguments in legal garb" by claiming to view the facts in the light most favorable to Hubbert without actually doing so. *Melendez v. Sec'y of Dep't of Corr.*, 2024 WL 3880013, at *3 (11th Cir. Aug. 20, 2024). His arguments amount to nothing more than mischaracterizing the record in the light most favorable to him and arguing his version of the facts entitles him to qualified immunity. Importantly, Brinley neither accepts the district court's findings as true nor challenges the district court's determination that clearly established law may be shown through general constitutional principles. In other words, because Brinley disputes the facts, and not the law, this Court has no jurisdiction.

Even if the Court determines it has jurisdiction, it should affirm the district court's denial of summary judgment on the basis of qualified immunity. A reasonable jury could find that Brinley violated Hubbert's Eighth Amendment right when he used a backhoe as a demolition tool while Hubbert was standing five to ten feet away with no safety equipment or training. A jury could also find Brinley's recklessness created a substantial risk of harm to Hubbert resulting in two-hundred-and-fifty pounds of concrete flying in every direction with inmates in

7

close proximity; Brinley knew about the risk he was creating because it was obvious; and Brinley showed his appreciation of the risk when he warned the inmates to "stand back."

Further, Hubbert's Eighth Amendment right to safe working conditions was clearly established. The district court correctly applied *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009), to deny Brinley qualified immunity. In fact, all three "clearly established" inquiries articulated in *Lewis* support the district court's ruling, which this Court may affirm on any basis the record supports. First, factually analogous cases about inmate workplace injuries gave Brinley fair warning that his conduct would violate Hubbert's constitutional right. Second, the principles of Eighth Amendment workplace conditions of confinement rights established in *Farmer v. Brennan* and applied within this Circuit gave Brinley further warning. 511 U.S. 825, 825 (1994); *Gilkerson v. Worthey*, 2008 WL 4194812, at *3 (N.D. Fla. Sept. 10, 2008). Finally, Brinley's conduct was sufficiently egregious that even absent case law and clear principles, he should have known that his actions were unconstitutional. This Court should therefore affirm and remand this case for trial.

8

# ARGUMENT

## I. The Court lacks jurisdiction to review Brinley's interlocutory appeal based only on factual disputes.

### A. Jurisdiction over interlocutory appeals is narrow.

Section 1291 of the United States Code confers this Court with jurisdiction over final decisions of the district court. 28 U.S.C. § 1291. Accordingly, "interlocutory appeals—appeals before the end of district court proceedings—are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). In rare circumstances, the Supreme Court has allowed a narrow exception to the rule prohibiting interlocutory appeals. That exception, however, extends only to "dispute[s] concerning an 'abstract issue of law' related to qualified immunity." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson*, 515 U.S. at 317); *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985) ("We emphasize at this point that the appealable issue is a purely legal one..."). In contrast, if the district court's decision turns on the sufficiency of the evidence—what a party may or may not be able to prove at trial—it does not fall within the narrow exception allowing interlocutory appeals of legal issues. *Johnson*, 515 U.S. at 313.

9

This Court has interpreted *Johnson* to give appellate courts discretion to review the district court's factual findings provided that the interlocutory appeal also concerns a legal issue. *See Hall v. Flournoy*, 975 F.3d 1269, 1276–77 (11th Cir. 2020). But the Court has long held that it lacks "interlocutory jurisdiction to review the denial of summary judgment where the only issues appealed are evidentiary sufficiency issues." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). The Court lacks "jurisdiction to entertain such appeals when the defendant's argument is merely, 'I didn't do it.'" *Bryant v. Jones*, 575 F.3d 1281, 1294 n.19 (11th Cir. 2009). A defendant may not "dress their arguments in legal garb" to get around this rule when the issues are purely factual. *Melendez v. Sec'y of Dep't of Corr.*, 2024 WL 3880013, at *3 (11th Cir. Aug. 20, 2024).

### B.    Brinley's interlocutory appeal turns solely on factual disputes.

As an initial matter, the district court's decision to deny summary judgment on qualified immunity grounds relied on several genuine disputes of material facts:

- The parties dispute whether Hubbert was provided with protective gear. Doc. 32 at 9. Hubbert did not receive any

protective gear, while Brinley claims someone provided all inmates with hard hats, gloves, goggles, reflective vests, and other necessary equipment. Doc. 28 ¶ 12; Doc. 24-1 ¶ 16.

- The parties differ on where Hubbert was instructed to stand. Doc. 32 at 9. Hubbert was told to stand five to ten feet away from the backhoe while in use but was not told where to stand while Brinley was breaking up the slab of concrete; Brinley claims someone told all inmates to stand at least twenty feet away (although, again, he does not say who gave these instructions). Doc. 28 ¶¶ 14, 17; Doc. 24-1 ¶ 20.

- The parties disagree on whether a block of concrete exploded into the air. Doc. 32 at 9–10. Hubbert saw concrete chunks fly through the air and maintains that a fifty-pound block hit him in the head, while Brinley claims he did not observe any explosion and that only a small piece of concrete broke off. Doc. 28 ¶¶ 18–19; Doc. 24-1 ¶¶ 21–22.

Properly viewing these factual disputes in the light most favorable to Hubbert, the district court found they satisfy the clearly established

11

test for Eighth Amendment conditions of confinement cases and denied summary judgment. Doc. 32 at 11.

Brinley's arguments on appeal simply re-argue these facts and the inferences that can be drawn therefrom in the light most favorable to him. He claims, for example, there is no record evidence to support a finding that he had actual subjective awareness of the risk to Hubbert. *See* Def. Br. at 22. That is a purely factual question, and so are the many claims throughout his brief about what he believes the "evidence" shows or does not show. *See, e.g.*, *id.* at 23–24, 29–30. These purely factual arguments make this appeal unfit for interlocutory review. *See Behrens*, 516 U.S. at 313; *Mitchell*, 472 U.S. at 528 n.9.

## C.   Brinley raises no legal issues on appeal.

Factual issues may be reviewable if they are accompanied with legal issues, but Brinley's appeal does not come close to meeting this standard. As explained above, his arguments on appeal only concern the sufficiency of the evidence against him, which is not an issue this Court has jurisdiction to review. *See Bryant*, 575 F.3d at 1294 n.19 (holding appellate courts lack interlocutory jurisdiction "where a defendant merely contests the merits of the plaintiff's underlying action");

12

*Melendez*, 2024 WL 3880013, at *3 (holding defendants cannot bring an interlocutory appeal when they "do not raise any legal arguments premised on the undisputed facts, but rather dispute the district court's factual conclusions themselves").

While Brinley presents his arguments under the guise of a legal question by appearing to dispute whether the law is clearly established, his brief ignores the numerous cases the district court relied on in determining the right of inmates to safe workplace conditions was clearly established. Doc. 32 at 6, 11 (collecting cases). He criticizes the district court for "consider[ing] then-existing law only at a very general level," but his brief fails to address at all the cases the district court relied on. *See* Def. Br. at 29–30. Perhaps Brinley does not attempt to explain why these cases do not amount to clearly established law because he cannot overcome the conclusion that his reckless conduct obviously meets the standard. Instead, he incorrectly overstates the requirement of factual similarity even though this Court has long recognized that clearly established law may be shown with "a broader, clearly established principle [that] should control the novel facts" of the

13

situation. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

To dress his arguments as legal ones, Brinley purports to view the facts in the light most favorable to Hubbert. *See, e.g.*, Def. Br. at 30 ("Even if Hubbert's version of events is accepted as true…"). But the argument he makes immediately after this preface whitewashes the key facts in his favor. *Id.* at 31 ("The evidence shows that Brinley was simply doing his job and attempting to break up the concrete."). Brinley's attempt to re-argue the facts and fight about what they show or do not show is exactly the type of argument this Court cannot entertain on interlocutory appeal.

Making matters worse, Brinley then seeks to apply an obviously incorrect legal standard to his slanted version of the facts, suggesting Hubbert must show Brinley had a "desire or intention to inflict punishment." *Id.* at 31. Not so. It is well-established Hubbert need only show subjective awareness and disregard of a substantial risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). And the record, when viewed in the light most favorable to Hubbert, supports the findings he was subjectively aware of and disregarded a substantial risk.

14

Brinley attempts one last half-hearted "legal" argument by

claiming "it is not clear that the Eighth Amendment could apply *at all*

to Brinley" because he does not work for the prison. Def. Br. at 31. As a

threshold matter, Brinley waived this argument by failing to make it

before the district court in his motion for summary judgment. Doc. 23;

*Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991) ("We have long

held that an issue not raised in the district court and raised for the first

time in an appeal will not be considered by this court."). Moreover,

Brinley does not even affirmatively make the argument now, instead

hedging with the statement "it is not clear." *See* Def. Br. at 31. Even if

this issue had not been waived, it certainly has been forfeited. *Sapuppo*

*v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We

have long held that an appellant abandons a claim when he either

makes only passing references to it or raises it in a perfunctory manner

without supporting arguments and authority.").

Even if he had properly presented this issue, it too is factual.

Whether Brinley had been "entrusted with the criminal-law function of

government" depends on his specific responsibilities with respect to

prison labor. *Timbs v. Indiana*, 586 U.S. 146, 151 (2019). That analysis

15

would involve examining Brinley's job responsibilities and the county's contract with the Florida Department of Corrections, which are factual issues not raised below and inappropriate for interlocutory review.

## II. If the Court has jurisdiction, it should affirm the district court's denial of Brinley's motion for summary judgment on the basis of qualified immunity

If this Court finds appellate jurisdiction, it should affirm the district court. On review, this Court should accept the district court's factual findings as true. Applying those findings, Brinley is not entitled to qualified immunity because: (1) Hubbert submits facts which describe a violation of his Eighth Amendment rights and (2) those Eighth Amendment rights were clearly established when Brinley violated them. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### A. The Court should take the facts assumed by the district court in its analysis.

When this Court reviews a denial of summary judgment based on qualified immunity that turns both on questions of evidence sufficiency and clearly established law, it has two options: the Court may either take the facts found by the district court as true to analyze the legal question or it may conduct its own independent factual analysis in the light most favorable to the plaintiff. *Stanley v. City of Dalton, Ga.*, 219

16

F.3d 1280, 1287 (11th Cir. 2000). In most cases, the Court takes the former approach. *See Cooper v. Smith*, 89 F.3d 761, 762 (11th Cir. 1996) ("In reviewing the district court's denial of summary judgment, we—in most qualified-immunity interlocutory appeals—accept the facts which the district court assumed for the purposes of its decision about whether the applicable law was clearly established."). Even when the Court chooses the latter option, it does not disturb a factual finding by the district court if there is *any* record evidence to support it. *Stanley*, 219 F.3d at 1287.

Here, the district court comprehensively examined the facts in its twelve-page summary judgment decision, so there is no need for this Court to independently review the facts. *See, e.g.*, *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1316 (11th Cir. 2005) (choosing not to independently analyze the facts because the district court made detailed factual findings); *Mitchell v. City of Jacksonville, Fla.*, 734 F. App'x 649, 651 n.2 (11th Cir. 2018) (choosing to conduct an independent factual analysis because the district court did not identify facts it relied on). In addition, while Brinley challenges the district court's evidence sufficiency determination, he does not argue any of the factual findings

17

are unsupported by the record. Accordingly, since this Court does not disturb factual findings supported by record evidence when reviewing the facts itself, an independent analysis would not yield a different result. *See Stanley*, 219 F.3d at 1287.

In the interests of judicial efficiency and because Brinley has not argued that a factual finding by the district court was unsupported, the Court should take the district court's factual findings as true for the purposes of its legal analysis. Such an approach would align with the policy behind the finality requirement, even in collateral order appeals. *See Hall v. Flournoy*, 975 F.3d 1269, 1274 (11th Cir. 2020) ("The long-stated purpose of the finality requirement is to promote judicial efficiency and discourage piecemeal review of the many issues arising from a lawsuit."); *Fleming v. United States*, 127 F.4th 837, 844 (11th Cir. 2025) ("Those values include judicial efficiency and respect for the 'special role' of district-court judges in managing their cases.").

## B.    A reasonable jury could find Brinley violated Hubbert's Eighth Amendment right to safe working conditions.

At the summary judgment stage, this Court must view evidence "in the light most favorable to [Hubbert] and draw all reasonable inferences in [his] favor." *Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d

1295, 1304 (11th Cir. 2016). To prevail on the first prong of qualified immunity, Hubbert must put forth evidence which makes out an Eighth Amendment deliberate indifference claim. Subject to Eighth Amendment scrutiny are "the treatment a prisoner receives in prison and the conditions under which he is confined[.]" *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The conditions of confinement must meet evolving standards of decency, *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), which means prison officials must "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison work assignments are considered conditions of confinement. *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). A prison workplace conditions claim under the Eighth Amendment requires "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

19

1.  **A reasonable jury could find a substantial risk of serious harm was present when untrained, unequipped inmates were ordered to stand within ten feet of the demolition of a two-hundred-and-fifty-pound concrete slab.**

A reasonable jury could find there was a substantial risk of serious harm to Hubbert when he was standing without safety equipment within ten feet of a backhoe demolishing concrete. Courts have found a sufficient risk of harm when, as here, an incarcerated plaintiff is injured while working. *See*, *e.g.*, *Smith v. Thomas*, 2013 WL 800697 (M.D. Ala., March 4, 2013) (finding a substantial risk of serious harm when official instructed untrained inmate to cut tree with chainsaw and direct traffic in road without warning signs); *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987) (finding substantial risk of serious harm where officer instructed inmate use unsafe ladder in painting assignment).

This Court has held that there must be a "strong likelihood, as opposed to a mere possibility," of injury. *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (quotation omitted). That standard is easily met here. Viewing the record in the light most favorable to Hubbert, the inmates were confronted with a slab of concrete that six of them could

20

not lift and weighed approximately two-hundred-and-fifty pounds. Doc. 32 at 1–2, 8. The concrete was laced with rebar and would not break from the force of a jackhammer and saw. *Id.* at 8. When Brinley attempted to pry the concrete out of the ground with heavy machinery, Hubbert stood five to ten feet away without any safety equipment. Doc. 28 at 3. A reasonable jury could easily find that these facts present a significant risk of injury to Hubbert and five other inmates, none of whom were wearing hard hats, goggles, or other safety equipment.

Notably, OSHA guidelines for demolition work recommend Personal Protective Equipment (PPE) which include "eye, face, head, hand, [and] foot protection[.]" *Demolition*, OSHA, https://www.osha.gov/demolition. More specifically, one standard provides that "Employees working in areas where there is a possible danger of head injury from impact, or from falling or flying objects . . . shall be protected by protective helmets."[1] OSHA Head Protection

---

[1] OSHA's standards are subject to judicial notice because they are a generally known and readily determinable fact. *See* Fed. R. Evid. 201(b); *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("Many cases have recognized that a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.").

Standard, 29 C.F.R. § 1926.100(a). Safety equipment is implicated only where there is a risk of harm in the first instance. Without any PPE here, Hubbert was exposed to a risk of serious, even fatal, harm when Brinley used the backhoe as a demolition tool, which posed a danger of head injury from flying concrete and steel.

Brinley appears to concede that the conditions were sufficiently dangerous to implicate the use of PPE. Indeed, Brinley claims that all inmates were provided with PPE. Def. Br. at 8–9, 21–22. The facts do not make clear whether the inmates were provided PPE, which the district court noted in its opinion. Doc. 32 at 9. But even if Brinley's version of the facts were correct, that PPE had been distributed, and thus needed, speaks directly to the serious risk at hand. It is undisputed that the inmates, including Hubbert, were not wearing PPE that day. Brinley would have seen that they were not doing so before the incident occurred; he therefore would have known that their lack of PPE created, or at least exacerbated, the substantial risk of harm they faced.

Brinley relies on *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015), to argue that the district court suffered from hindsight bias, and

22

that an event's occurrence does not indicate its likelihood of occurring. As an initial matter, this argument ignores the evidence that shows Brinley ought to have appreciated the risk *before* he used the backhoe. In any event, Brinley ignores the crucial statement in *Brooks* in the very same paragraph that, while not sufficient on its own, "[t]he very fact of injury may . . . be a factor in assessing that *ex ante* risk[.]" *Brooks*, 800 F.3d at 1302. Here, the very fact that Hubbert was injured in the head and back by a fifty-pound slab of concrete flying through the air was a highly relevant factor the district court assessed when determining the *ex ante* risk of harm. This fact also speaks to the force with which the backhoe was operating and indicates it was even more likely for a smaller chunk to break off and strike and seriously injure Hubbert.

Brinley also relies on *Visage v. Woodall*, 798 Fed. Appx. 406 (11th Cir. 2020), where this Court held that no substantial risk of serious harm existed when a window slammed shut on an inmate's hand. But this reliance is misplaced. While this Court held that a substantial risk should not require a "perfect storm of events" for harm to occur, *id.* at 408 (quoting *Brooks*, 800 F.3d at 1303), no such "perfect storm" had to

23

transpire here. Here, there was a much more predictable and severe risk to Hubbert and five other inmates than the plaintiff in *Visage*, where the risk was a hand under a window. By contrast, Brinley was using the backhoe as a demolition tool to dismantle two-hundred-and-fifty pounds of rebar-laced concrete. It was foreseeable to Brinley that his actions would injure someone standing five to ten feet away without a helmet. No "perfect storm of events" was necessary.

Additionally, Brinley asserts that deliberate indifference requires criminal recklessness to argue Hubbert cannot meet this standard. *See* Def. Br. at 17. But he ignores that "substantial harm" in criminal recklessness refers to both the probability of harm and the potential severity of the harm. *See* Wayne LaFave, *Substantive Criminal Law* § 5.4(f) (3d ed.) ("Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great."). Accordingly, even if the probability of injury is "well below fifty percent[,]" if the potential severity of harm is high, then it is substantial. *Id.* One example of criminal recklessness is loading a single bullet in a revolver's chamber and pulling the trigger, even though the probability would be just one in six. *Id.*

24

In this case, Hubbert could have suffered death or paralysis from blunt force trauma to his head or spine. The magnitude of the risk of harm from exploding the concrete was great. So even if Brinley argues the risk was "well below fifty percent[,]" it remained substantial. The Eighth Amendment does not permit Brinley to play Russian roulette with Hubbert's life and health.

### 2. A reasonable jury could find Brinley was deliberately indifferent to the harm.

The second prong of the deliberate indifference test requires a showing that the defendant was "subjectively aware that his own conduct caused" the substantial risk, and then did not respond reasonably to it. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). This subjective knowledge can be proven directly or through circumstantial evidence, including "the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Here, there is both direct and circumstantial evidence that Brinley was aware of the risk such that a reasonable jury could find he was deliberately indifferent.[2]

---

[2] In addition, if a reasonable jury can find there was a substantial risk of serious harm, it can also find that Brinley subjectively knew about it because Brinley had the same facts that the jury will have. *See Wade*,

The analysis begins with the scope of Brinley's subjective knowledge, and the record shows Brinley was aware of the risk created by his conduct. Brinley was there on the jobsite—he knew that the rebar-laced concrete was too big for six inmates to lift and too strong for the force of a jackhammer. He also knew that Hubbert was standing right next to the concrete without any safety equipment or training. Doc. 28 at 3–4. With all this information, Brinley cannot claim ignorance of the risk he created when he proceeded to demolish two-hundred-and-fifty pounds of concrete.

Brinley's undisputed statement for the inmates to "stand back" is further evidence that he knew about the risk of harm to Hubbert. His words indicate he knew not only that the situation was dangerous, but also that the inmates were standing too close to the potential explosion. Brinley argues on appeal that his command to stand back doesn't prove he was aware that a *fifty-pound* rock might eject from the concrete. Def. Br. at 22. But it has been long established that prison officials cannot

---

106 F.4th at 1260 ("the reviewing court *must* assess the defendant's knowledge by reference to the risk created by his own conduct"). So when the district court found a substantial risk of harm, it followed that Brinley was deliberately indifferent to it.

26

escape liability for being deliberately indifferent by claiming to be unaware of the minute details of an event. *Farmer*, 511 U.S. at 843–44. Instead, the relevant inquiry is the existence of risk. *Id.* Accordingly, it is irrelevant that Brinley might not have been able to "guess beforehand precisely" the weight of the concrete. *Id.* at 844; *see also Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 619 (11th Cir. 2007) (holding a prison official is liable if they knew a stabbing would occur, regardless of whether they knew which individual would stab the plaintiff). Under well-established law, it is enough that Brinley knew there was a risk of explosion when he demolished the concrete slab.

Regardless of Brinley's subjective knowledge, the risk of injury was obvious. Hubbert and others were asked to work near heavy machinery without PPE or training. Brinley, as the only representative in charge of the demolition project, knew that prying such a massive slab of concrete and steel out of the ground requires caution. In addition, it is well-established that safety guidelines and prison protocols are evidence that prison officials knew their conduct violated the law. *See Hope v. Pelzer*, 536 U.S. 730, 744–45 (2002) (holding Department of Justice reports and Alabama Department of Corrections

27

protocols were evidence that Alabama prison officials knew they were violating the law). Here, OSHA guidelines requiring PPE for demolition are instructive. Given Brinley is "responsible for the management of land and property owned and managed by St. Lucie county[,]" he should have been aware of safety protocols. Doc. 24-1 at 1. While Hubbert was not aware of OSHA protocols nor trained for this project, Brinley was because he had thirteen years of prior experience in land management. *Id.* The necessity of PPE is further evidence of his subjective knowledge of the risk present during demolition without protective equipment.

The record also establishes that Brinley did not respond reasonably to the risk of exploding concrete. As the supervisor in charge, all inmates were told to report to him, and disobeying his orders would result in punishment. Doc. 28 at 3. Hubbert was previously told to stand five to ten feet from the concrete slab. *Id.* While Brinley claims it was twenty to twenty-five feet, the Court must accept Hubbert's version of the facts for purposes of summary judgment, and, in any event, neither party argued it was Brinley who told Hubbert where to stand. Brinley's only arguably preventative measure was to say two words—"stand back"—while simultaneously demolishing the concrete.

28

*Id.* at 3–4. A reasonable jury could easily find Brinley's statement was an unreasonable response to the serious risk of exploding concrete.

A jury could also find that Brinley, notwithstanding his warning, should have ensured Hubbert complied with it *before* commencing the dangerous backhoe work. At trial, Hubbert will present evidence of reasonable responses to the substantial risk of harm. For example, Brinley could have ensured all inmates had PPE, checked to see if inmates were near the backhoe, trained the inmates on how to safely complete the job, or, at the very least, waited after yelling to "stand back" to ensure no inmates were in harm's way. Instead, Brinley did nothing. A reasonable jury could conclude that Brinley's actions disregarded the safety of the inmates he had supervisory control over.

### 3.     A reasonable jury could find Brinley caused the harm.

The third prong requires "a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks*, 800 F.3d at 1301. Here, causation is not at issue. Brinley does not dispute he was both the sole representative in charge of the inmates and the one operating the demolition equipment. Doc. 24-1 at 3. Based on these facts, a reasonable jury could find that Brinley's inaction created a

substantial safety risk to Hubbert and the other inmates, and that his actions operating the backhoe created the explosion that harmed Hubbert.

In sum, a substantial risk of serious harm was present because Hubbert and others stood in close proximity to an active demolition of two-hundred-and-fifty pounds of concrete without proper PPE, training, or instruction. Brinley was deliberately indifferent because he knew these risks, and only said "stand back" while simultaneously demolishing the concrete. And Brinley caused the risk because he was the only authority present, took no reasonable steps to ensure the safety of Hubbert and the other inmates, and was the person operating the backhoe. Accordingly, the district court properly denied summary judgment on this ground and this Court should affirm.

## C.    Hubbert's right was clearly established.

The second prong of the qualified immunity analysis asks whether an official's conduct violated a clearly established right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The crux of the clearly established question ensures that officials have notice that their conduct violates a right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Courts may use

three methods to find that a right was clearly established and thus gave fair warning to officials: (1) "case law with indistinguishable facts," or (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) particularly egregious conduct. *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Any one of these is sufficient to meet the clearly established standard. And if the violated right was clearly established, qualified immunity must be denied. *See*, *e.g.*, *Mercado v. City of Orlando*, 407 F.3d 1152, 1160–62 (11th Cir. 2005).

The district court correctly found that Hubbert's Eighth Amendment right to safe working conditions was clearly established, precluding Brinley from being entitled to qualified immunity. Doc. 32 at 11. On appeal, Brinley ignores the numerous cases the district court relied on. Doc. 32 at 6, 11. Instead, Brinley contends there is no existing case law to put an official on notice that Hubbert's right was clearly established. That is incorrect and qualified immunity was properly denied.

All three *Lewis* factors support the district court's finding that "there was a clearly established constitutional right at the time of the

31

alleged violation." Doc. 32 at 11. First, several cases within the Eleventh Circuit and most sister circuits have established in factually similar cases that inmates have Eighth Amendment workplace conditions of confinement rights. Second, Eighth Amendment principles articulated in *Farmer v. Brennan* establish Hubbert's right to safe working conditions in prison. 511 U.S. 825, 842 (1994). And third, Brinley's conduct was sufficiently egregious that he should have been on notice that his conduct was unconstitutional even without case law or prior general principles.

### 1. Fundamentally similar cases clearly established Hubbert's right.

A plaintiff may point to a factually analogous case to show that a right is clearly established. *Lewis*, 561 F.3d at 1291–92. To qualify as an analogous case, the facts do not need to be an exact match. *See Anderson*, 483 U.S. at 640 (finding clearly established question does not require that "the very action in question has previously been held unlawful"). Rather, the reasoning of prior cases needs to "send the same message" to officers in novel factual scenarios. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). If the case is sufficient to give fair warning to reasonable officers, the right is clearly established.

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014). In Brinley's case, and as the district court found, a range of precedent gave him irrefutable warning.

In *Farmer*, the Supreme Court held that the Eighth Amendment's prohibition on cruel and unusual punishment forbids prison officials from acting with deliberate indifference to a substantial risk of serious harm to an inmate. 511 U.S. at 842 (holding prison officers can be liable for constitutional violation where officials "acted or failed to act despite . . . knowledge of a substantial risk of serious harm."). In this Circuit, moreover, the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Caldwell*, 748 F.3d at 1099.

Courts in the Eleventh Circuit have specifically applied these conditions of confinement rights to inmate workplace injuries like Hubbert's. *See Buckley v. Barbour Cnty., Ala.*, 624 F. Supp. 2d 1335 (M.D. Ala. 2008) (finding Eighth Amendment right was clearly established at motion to dismiss stage when official instructed untrained inmate to cut tree with chainsaw); *Gilkerson v. Worthey*, 2008 WL 4194812 (N.D. Fla. Sept. 10, 2008) (holding "if Defendant knowingly compelled Plaintiff to perform a work task which was a

33

danger . . . this violated a clearly established right" where official instructed inmate to change tire); *Smith v. Thomas*, 2013 WL 800697 (M.D. Ala., March 4, 2013) (finding Eighth Amendment right clearly established at motion to dismiss stage when official instructed untrained inmate to cut tree with chainsaw and direct traffic in road without warning signs).

Most circuits also recognize Eighth Amendment claims for unsafe prison workplace conditions. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (finding colorable Eighth Amendment claim where officer instructed employee-inmate use unsafe ladder in painting assignment); *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (finding Eighth Amendment cause of action where officer instruction caused employee-inmate to overwork); *Rhodes v. Michigan*, 10 F.4th 665, 683 (6th Cir. 2021) (finding Eighth Amendment right clearly established where laundry cart fell on employee-inmate while officer operating truck); *Hall v. Bennett*, 379 F.3d 462, 465–66 (7th Cir. 2004) (finding colorable Eighth Amendment claim where employee-inmate was injured after officer instructed inmate to do electrical work without proper equipment); *Ambrose v. Young*, 474 F.3d 1070, 1078 (8th Cir. 2007)

34

(denying qualified immunity because compelling inmate to perform

dangerous labor is clearly established Eighth Amendment violation);

*Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (finding Eighth

Amendment applies where "prisoners are compelled to perform physical

labor which is beyond their strength, endangers their lives or health, or

causes undue pain"); *Smith v. United States*, 561 F.3d 1090, 1105 (10th

Cir. 2009) (finding colorable Eighth Amendment claim where official

instructed inmate to work in closet with asbestos in it).

Brinley, apparently applying some undefined, heightened

standard for clearly established law, claims that no cases are factually

similar enough to give Brinley notice. Doc. 12 at 30. But because no case

will have strictly the same facts as the facts at issue in a clearly

established inquiry, identical facts are not required. *Ziglar v. Abbasi*,

582 U.S. 120, 151 (2017). Neither does a plaintiff, as Brinley implies,

need to show that their case emulates only the most extreme Eighth

Amendment violations. *See* Doc. 12 at 31. Courts require only *a case*

that would have made Brinley aware that use of heavy machinery in

close proximity to unprotected, untrained inmates could violate

Hubbert's right to safe prison working conditions. *Anderson*, 483 U.S. at 640.

Here, several cases within and outside the Eleventh Circuit establish Brinley had ample warning that Hubbert had an Eighth Amendment right against dangerous prison working conditions. Relying on some of these cases, the district court correctly found the same. Doc. 32 at 6. Accordingly, this Court should affirm.

### 2.    Conditions of confinement principles clearly established Hubbert's right.

A plaintiff is not limited to using factually analogous cases to show that a right is clearly established—a broad statement of principle within the Constitution, statute, or case law is also sufficient. *Lewis*, 561 F.3d at 1291–92. Clear principles applying the Eighth Amendment to inmate working conditions also gave Brinley notice of Hubbert's right.

The district court correctly found that Hubbert's Eighth Amendment right to safe workplace conditions of confinement was clearly established through broad principles originating from the Supreme Court. Doc. 32 at 11. *Farmer*'s principles, and their

36

application to inmate work conditions within the Eleventh Circuit, gave Brinley clear notice that he was violating Hubbert's right.

It has been long recognized that the Eighth Amendment applies to safe and humane prison conditions of confinement. *Farmer*, 511 U.S. at 825. The Constitution imposes duties on prison officials to take reasonable measures to protect inmates and provide conditions that meet "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976); *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The conditions of confinement principles from *Farmer* have been applied to many areas of inmate life. *See, e.g.*, *May v. Hetzel*, 630 Fed. Appx. 994, 996 (11th Cir. 2015) (medical context); *Brooks v. Warden*, 800 F.3d 1295, 1303–04 (11th Cir. 2015) (sanitation context).

These widespread principles that inmates have a right against cruel or unusual prison conditions of confinement clearly established Hubbert's right to safe prison workplace conditions. And, the Eleventh Circuit have even gone further than *Farmer*, confirming that "[p]rison work assignments are considered conditions of confinement subject to scrutiny under the Eighth Amendment." *Gilkerson v. Worthey*, 2008

37

WL 4194812 at *3 (N.D. Fla. Sept. 10, 2008); *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987); *see also Johnson v. Calloway*, 2017 WL 712635 at *4 (M.D. Ala. Feb. 3, 2017).

These principles—handed down from the Supreme Court thirty years ago in *Farmer* and applied routinely in the prison work context nationwide—gave Brinley adequate notice that his operating heavy machinery near unprotected, untrained inmates violated Hubbert's rights under the Eighth Amendment. Even a cursory survey of the case law would allow a reasonable official in Brinley's position to understand the same. If this case does not satisfy *Lewis*'s second prong, it is hard to imagine one that would.

### 3.  Brinley's conduct was egregious.

Lastly, Brinley's conduct was so glaringly inappropriate that this Court should affirm even absent the above precedent. With or without the analogous case law and clear principles, conduct can be so egregious that it satisfies the clearly established test notwithstanding such authority. *Lewis*, 561 F.3d at 1291–92; *Taylor v. Riojas*, 592 U.S. 7 (2020) (finding circumstances so egregious where inmate in "shockingly unsanitary" cell that right was clearly established). Here, Brinley's

38

conduct was so egregious that no authority is needed to establish a violation of a clearly established right.

The Eighth Amendment's protection against cruel and unusual punishment applies to inmates forced to work in unsafe conditions. As explained above, Brinley was in charge of Hubbert and other inmates. Brinley used heavy machinery to tear up rebar-laced concrete that was too heavy for the inmates to lift. He did so while Hubbert, an inmate with no choice but to follow orders and who had no training in safety protocol and wore no safety equipment, stood as near as five feet away. It was obvious that Brinley's conduct could seriously injure Hubbert. And it did so permanently. Doc. 10-1 at 9. Brinley's conduct was sufficiently egregious to clearly establish Hubbert's Eighth Amendment rights.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Brinley's appeal for lack of jurisdiction. If this Court determines it has jurisdiction, it should affirm the district court's denial of Brinley's motion for summary judgment and remand this case for trial.

Respectfully submitted,

By: /s/ Danielle Hamilton

Nicolas Martinez
Luke Beasley
Jonathan Decker*
Matthew Johnson*
CJ Miller*
Northwestern University Pritzker School of Law
Carter G. Phillips Center for Supreme Court and
Appellate Advocacy
375 E. Chicago Avenue, 8th Floor
Chicago, IL 60611
(312) 503-1486
danielle.hamilton@law.northwestern.edu
* Law student appearing pursuant to Circuit
Rule 46-11

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

Counsel for Plaintiff-Appellee Joshua Hubbert

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of this document exempted by Fed. R. App. P. 32(f), this document contains 7801 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century in a 14-point font size.


/s/ Danielle Hamilton

41

## CERTIFICATE OF SERVICE

I, Danielle Hamilton, counsel for Joshua Hubbert, certify that, on March 21, 2025, a copy of the attached brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to have been served have been served.

/s/ Danielle Hamilton