**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

---

No. 24-13756

---

JOSHUA M. HUBBERT,

*Plaintiff-Appellee,*

*versus*

KENNY BRINLEY,

St. Lucie County Supervisor of FDOC Inmate workers,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:23-cv-14272-KMM

---

Before NEWSOM, BRASHER, and TJOFLAT, Circuit Judges.

BRASHER, Circuit Judge:

Joshua Hubbert, a Florida prisoner proceeding pro se,[1] sued Kenny Brinley, a county employee with whom he had worked on a demolition project. Hubbert was injured when Brinley used a backhoe to uproot a massive concrete slab, causing a large chunk to fly through the air and hit Hubbert in the back of the head. Hubbert alleged that Brinley's conduct violated the Eighth Amendment's prohibition on "cruel and unusual punishments." Brinley sought summary judgment on the grounds that he hadn't violated Hubbert's constitutional rights and, in any event, that he was entitled to qualified immunity. In support of the latter contention, he argued that the law underlying Hubbert's claim wasn't "clearly established" at the time of the incident in question. The district court denied Brinley's motion, and he appealed.

We assume, without deciding, that Brinley's conduct violated a constitutional right. But after we reduce the relevant right to its proper level of generality, we conclude that that right was not clearly established at the time of its violation. Brinley was not "on notice that [his] conduct [was] unlawful," *Saucier v. Katz*, 533 U.S. 194, 206 (2001), and he is entitled to qualified immunity. We therefore reverse and remand with instructions that the district court enter summary judgment in Brinley's favor.

[1] The nonprofit Rights Behind Bars and Northwestern Law School's appellate advocacy clinic represented Hubbert pro bono in this Court. We thank them for their service.

**I.**

Because this appeal arises out of Brinley's summary judgment motion, we recount the facts in the light most favorable to Hubbert, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In 2019, Hubbert and several other prisoners were assigned to perform manual labor on a project for St. Lucie County. To make way for a new building that it planned to erect on a piece of public property, the county needed to remove an existing storage shed and the steel-reinforced concrete slab beneath it. Because doing so would be labor-intensive, the county requested the assistance of inmates pursuant to its contract with the Florida Department of Corrections. The prisoners were required to work alongside county employees to help deconstruct and dispose of the concrete slab.

Hubbert says that he wasn't well-prepared for the job. He wasn't given any demolition-related training or made aware of any safety procedures. And although the county was contractually obligated to furnish tools and protective equipment, Hubbert contends that he wasn't issued any.

For the most part, the workers were able to break up the concrete with saws and jackhammers and carry the smaller shards to a nearby dumpster. But the reinforced slab sometimes refused to yield to ordinary tools. As a result, Brinley, the supervising county employee, operated a backhoe fitted with a fork attachment to help dislodge and move some of the larger pieces.

At one point, when several inmates couldn't lift a particularly big segment of the slab, Brinley decided to use the backhoe to pry it out of the ground. Just before doing so, he told everyone to "stand back." Although Brinley didn't specify a distance, Hubbert alleges that before the incident he was instructed to keep approximately 5–10 feet away from the backhoe. In any event, not long after Brinley issued his warning, "his effort to pry the piece loose resulted in a shattering burst" and chunks of concrete flew through the air. A piece hit Hubbert in the back of the head, knocking him to the ground.

Hubbert sustained serious and lasting injuries. He suffered a depression in his skull, a scar across his shoulder, and muscular problems that have persisted since the incident. He also continues to deal with neurological issues.

Hubbert sued Brinley in federal district court. Proceeding under 42 U.S.C. § 1983, Hubbert alleged that Brinley had shown "deliberate indifference" to his physical safety in violation of the Eighth Amendment. Brinley moved for summary judgment on the grounds (1) that his conduct didn't violate the Eighth Amendment and (2) that he was in any event entitled to qualified immunity because the constitutional right underlying Hubbert's claim wasn't "clearly established" at the time of the accident. The district court denied Brinley's motion. The court first found that there were genuine issues of material fact regarding whether the county had provided safety equipment, how far inmates were told to stand from the backhoe, and whether the concrete block "exploded" and sent

50-pound pieces flying. *See* Order Denying Def.'s Mot. For Summ. J. at 9–10, Dkt. No. 32. The court further held that it was clearly established at the time of the incident that prisoners had a right "to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." *Id.* at 11.

Brinley appealed.

**II.**

As an initial matter, we have appellate jurisdiction under the collateral order doctrine, *see Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020), because Brinley's appeal turns on a purely legal question—namely, "whether the facts alleged by [Hubbert] support a claim of violation of clearly established law," *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985) (citation modified). And we review a district court's denial of summary judgment *de novo*. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021).

A government official sued for damages under section 1983 may assert that he is entitled to qualified immunity from suit. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because it is undisputed here that Brinley was performing the sort of discretionary function to which qualified immunity applies, Hubbert bears the burden of

demonstrating both (1) that Brinley violated his Eighth Amendment rights and (2) that those rights were clearly established at the time of the alleged violation. *Id.* at 232.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Clearly established rights cannot be defined "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). Instead, they must be narrowly construed and "defined with specificity" *Id.* In short, the "clearly established" standard aims to "ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier*, 533 U.S. at 206.

In our circuit, plaintiffs can show that a right is clearly established in one of three ways. First, they can point to a "materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose" to demonstrate that existing precedent has clearly established the law. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). Second, they can demonstrate that a "broader, clearly established principle" from existing case law "should control the novel facts in this situation." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). *See also Powell*, 25 F.4th at 920. Or third, they can convince us that their "case fits within the exception of conduct which so obviously violates

[the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159. Under methods (2) and (3), we look for "obvious clarity"—"a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Powell*, 25 F.4th at 920. Cases finding clearly established rights under one of the "obvious clarity" methods are "rare and don't arise often." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020).

**III.**

For purposes of this appeal, we assume, without deciding, that Brinley's conduct—operating the backhoe to break up the piece of concrete with co-workers nearby—violated Hubbert's constitutional right to be free from cruel and unusual punishment. But, after careful review, we nonetheless conclude that Hubbert has failed to demonstrate that the right in question was clearly established at the time of that violation. Accordingly, Brinley is entitled to qualified immunity.

As mentioned above, the district court determined that Hubbert had a clearly established right "to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." Order Denying Def.'s Mot. For Summ. J. at 9–10, Dkt. No. 32. But this description of Hubbert's right is framed "at a high level of generality," which sweeps too broadly for purposes of our qualified immunity analysis. *Emmons*, 586 U.S. at 42. After all, "[q]ualified immunity is no immunity at all if 'clearly established' law can simply

be defined as the right to be free from [a constitutional violation]." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015). We must therefore define the right "with specificity" before we can determine whether it was clearly established at the time of its alleged violation. *Emmons*, 586 U.S. at 42.

Defined at the proper level of generality, Hubbert's asserted right amounts to an Eighth Amendment right for a prisoner to be free from a co-worker's recklessness. We conclude that Hubbert fails to demonstrate that such a right was clearly established under any of our three approaches at the time of his injury.

*A.*

Starting with the first approach, no existing case law is sufficiently similar to this case to create a clearly established right to be free of risks associated with a co-worker's recklessness. The district court and Hubbert both point to precedents that they contend create such a right, but upon examination, we cannot say that any of these precedents establish such a right.

The district court identified four precedents—*Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015); and *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019)—in ruling that Brinley violated a clearly established right. But none of those cases are materially similar to this case. Specifically, *Farmer* is about a transgender inmate who was assaulted and raped by his cellmate; there, the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other

prisoners." 511 U.S. at 832. *Ort* considered whether temporarily withholding water from an inmate when they refused to work violated the Eighth Amendment; there, we held that such punishment did not inflict "unnecessary and wanton" pain and therefore did not violate any constitutional rights. 813 F.2d at 321. *Brooks* weighed in on general prison cleanliness conditions; there, we reiterated that inmates have a clearly established right to "not be confined in conditions lacking basic sanitation." 800 F.3d at 1303. And finally, *Marbury* is another prison violence case, where we reiterated that, in the context of inmate-on-inmate violence, prison officials "must take reasonable measures to guarantee the safety of inmates." 936 F.3d at 1233. None of those cases resemble this one.

Hubbert attempts to bolster the district court's holding with additional caselaw, which he claims is sufficiently factually similar to this case to create a clearly established right, but his attempt also fails. Specifically, Hubbert cites *Caldwell v. Warden*, 748 F.3d 1090 (11th Cir. 2014), for the proposition that prisoners have a clearly established right to safe working conditions. But *Caldwell* is yet another case about inmate-on-inmate violence, and it is therefore not factually analogous to this case. 748 F.3d at 1099. He also cites three district court cases and seven out-of-circuit cases that he claims support his position. But, as *Powell* reminds us, under method (1), a clearly established right may be shown only "by pointing to a materially similar decision of the *Supreme Court*, of *this Court*, or of the *supreme court of the state in which the case arose*." 25 F.4th at 920 (emphasis added). Hubbert cannot demonstrate clearly established law under method (1).

*B.*

Turning to the second approach, we are similarly not convinced that a "broader, clearly established principle" from existing case law creates a clearly established Eighth Amendment right to be free from risks stemming from a co-worker's recklessness. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). *See also Powell*, 25 F.4th at 920.

Hubbert argues that inmates enjoy a "long recognized" right to "safe and humane prison conditions of confinement." We agree. Supreme Court precedent and our own caselaw make clear that prison officials may not subject inmates to conditions that deprive them of basic human needs or intentionally expose them to serious dangers arising from incarceration. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (food and other basic necessities); *Farmer*, 511 U.S. at 832 (protection from inmate-on-inmate violence); *Brooks*, 800 F.3d at 1305 (11th Cir. 2015) (basic sanitation). The conditions of confinement cases reflect the broad principle that, because inmates are confined and dependent on the state for their basic needs and safety, the Eighth Amendment prohibits inhumane conditions or punishment, as measured against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

But that broad principle does not clearly establish the unlawfulness of Brinley's conduct in this case. Brinley is not the prison official who ordered Hubbert to work on this construction project

as part of his conditions of confinement; he was a fellow worker and site supervisor. The conditions of confinement principle is about risks and deprivations that arise from incarceration itself—the threat of other inmates, the need to rely on prison officials for food and medical care, etc. The threat of injury from a co-worker's recklessness, by contrast, is not especially related to being an inmate or to the conditions of confinement. And, as the Supreme Court has cautioned, an accidental injury is not "to be characterized as wanton infliction of unnecessary pain" for purposes of the Eighth Amendment. *Estelle*, 429 U.S. at 105.

We cannot say that clearly established law extends the conditions of confinement principle to allow a prisoner to sue a co-worker based on that co-worker's recklessness. Accordingly, because the conditions of confinement principle did not provide Brinley "notice that [his] conduct [was] unlawful," Hubbert's attempt to demonstrate a violation of clearly established law under method (2) fails. *Saucier*, 533 U.S. at 206.

*C.*

Lastly, we are not convinced that this "case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159. As we recently reiterated, "[t]he Constitution sets the boundaries for federal liability, not the outer limits of accountability." *Hughes v. Locure*, 166 F. 4th 121, 130 (11th Cir. 2026). The Eighth Amendment prohibits "cruel and unusual punishments"—not a co-worker's

recklessness. It is possible, of course, that a prison official might require a prisoner to do such clearly dangerous and injurious work that a constitutional violation is obvious. But the mere fact that an injured worker is an inmate does not transform a workplace accident into an Eighth Amendment violation. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (noting that not every injury "inflicted by governmental negligence" is redressable under the Constitution). As a result, we cannot say that generalized Eighth Amendment principles create a clearly established right to be free from the kind of co-worker recklessness that resulted in Hubbert's injury in this case—and much less with the "obvious clarity" that method (3) demands. *See King*, 961 F.3d at 1146.

## IV.

We do not decide whether Hubbert, who litigated pro se in the district court, should be allowed to pursue state tort claims against Brinley on remand. We **REVERSE** the district court's denial of qualified immunity and **REMAND** for further proceedings consistent with this opinion.

NEWSOM, Circuit Judge, concurring:

I concur in the Court's decision and its written opinion. Charitably giving Hubbert the benefit of the doubt, the Court "assume[s], without deciding, that Brinley's conduct—operating the backhoe to break up the piece of concrete with co-workers nearby—violated Hubbert's constitutional right to be free from cruel and unusual punishment." Maj. Op. at 7. Speaking only for myself, I'll just say that I'm quite confident it did not. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"); *Wade v. McDade*, 106 F.4th 1251, 1269–70 (11th Cir. 2024) (en banc) (Newsom, J., concurring) ("Just as a parent can't accidentally punish his or her child, a prison official can't accidentally—or even recklessly—'punish' an inmate.").

TJOFLAT, Circuit Judge, Specially Concurring:

Today's majority opinion gives Hubbert the benefit of the doubt: it "assume[s] without deciding, that Brinley's conduct . . . violated Hubbert's right to be free from cruel and unusual punishment." Maj. Op. at 7. In concurring with the majority, Judge Newsom is "quite confident" that Brinley's conduct did not violate the Eighth Amendment. Newsom Concurrence at 1. I would go further. The Eighth Amendment does not cover Brinley's conduct, and we cannot properly assume its protections apply to the facts in this case.

**I.**

The contract between the Florida Department of Corrections ("Department of Corrections") and the St. Lucie County Board of Commissioners (the "County") "provided for the respective rights, duties, obligations, and responsibilities of both St. Lucie County and the Florida Department of Corrections" when organizing inmate work squads to assist with County work. According to the undisputed facts in this case, the parties proceeded under the following arrangement:

> • Pursuant to Florida law, the Department of Corrections was responsible for supervision of the work squads.
>
> • The Department of Corrections kept physical custody of the vehicles, trailers, and all tools, equipment, supplies, materials and personal work items furnished by the County.

> • The County communicated what work was to be performed to the Department of Corrections officers, and the Department of Corrections officers secured the inmates required for the specific work.
>
> • While at the worksite, the County communicated the direction of the work to the Department of Corrections officers, who then communicated those directions to the inmates.
>
> • The Department of Corrections did not permit the County to speak with or handle the inmates. The County only communicated with the Department of Corrections Officers.

From these details, it is clear the parties intended for the Department of Corrections officers to remain responsible for inmates' safety at all times.

**II.**

In relevant part, the Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. It is settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)). The Eighth Amendment also imposes duties on prison officials, who must "provide humane conditions of confinement . . . ensure that inmates receive ade-

quate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832, 114 S. Ct. at 1970.

In *Farmer v. Brennan*, the Supreme Court considered a civil suit brought by an inmate alleging prison officials violated the Eighth Amendment by their deliberate indifference to the inmate's safety. 511 U.S. at 829, 114 S. Ct. at 1974. In adopting a subjective recklessness standard to govern Eighth Amendment claims, the Court stated: "The question under the Eighth Amendment is whether *prison officials*, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 843, 114 S. Ct. at 1982 (quoting *Helling*, 509 U.S. at 35, 113 S. Ct. at 2481) (internal quotation marks omitted) (emphasis added).

When Department of Corrections officers transported Hubbert to the jobsite on the day of the accident, the officers turned the jobsite into Hubbert's place of confinement for Eighth Amendment purposes. It cannot be said that Brinley, a County employee, was responsible for the conditions of Hubbert's confinement in the sense that Brinley had an Eighth Amendment duty not to subject Hubbert to cruel and unusual punishment. The Eighth Amendment duty to maintain Hubbert's confinement must have instead remained with the Department of Corrections officers.

Imagine that, instead of working alongside Hubbert at a jobsite, Brinley was a worker that the Department of Corrections contracted with to do construction work at one of its prisons. As

Brinley completed his construction work, the Eighth Amendment would not attach an independent duty to care for the prisoners in the Department of Corrections and its officers' custody. Instead, Brinley's responsibility, like that of any potential tortfeasor, would be to perform his assigned work with due care. Whether or not Brinley was also a County employee or acted "under color of law" for section 1983 purposes would be irrelevant to the constitutional question of duty under the Eighth Amendment. Indeed, the Eighth Amendment would not reach Brinley's conduct at all.

So too here. In the instant case, Hubbert may only properly bring a common law tort claim against Brinley for negligence. As in *Farmer*, the relevant question as applied to Hubbert's Eighth Amendment claim "is whether prison officials, acting with deliberate indifference, exposed [Hubbert] to a sufficiently substantial risk of serious damage to his future health." *Farmer*, 511 U.S. at 843, 114 S. Ct. at 1982. Brinley's conduct cannot be properly understood as the conduct of a prison official solely because he operated a forklift alongside inmates while employed by the County.

This distinction does not foreclose Hubbert from potentially pursuing his claim as a state tort action. Brinley's act or omission "might well be something society wishes to discourage," and where harm occurred to Hubbert, "society might well wish to assure compensation." *Id.* at 837–38, 114 S. Ct. at 1979. But, echoing *Farmer* again, "the common law reflects such concerns when it imposes tort liability on a purely objective basis." *Id.* Brinley's "failure to alleviate a significant risk that he might have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" *Id. See Wilson v. Seiter*, 501 U.S. 294, 300, 111 S. Ct. 2321, 2325 (1991) ("The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century.").

**III.**

In "assum[ing], without deciding, that Brinley's conduct violated a constitutional right," Maj. Op. at 4, today's majority risks taking a step toward realizing the Supreme Court's concern about 42 U.S.C. § 1983 claims "demot[ing]" the Constitution into "a font of tort law." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 1717 n.8, (1998). To be clear, I do not read today's majority as hiding the ball or acting in bad faith in reaching qualified immunity and reversing the District Court's ruling. Indeed, because the District Court ruled on qualified immunity below, the issue is squarely before us on appeal. Instead, I write to clarify that today, as ever, "liability for negligently inflicted harm is categorically beneath the threshold" of the Eighth Amendment. *Id.* at 849, 118 S. Ct. at 1718. Insofar as Brinley, by working alongside inmates, can be said to have assumed the Department of Corrections officers' duties to maintain the conditions of inmates' confinement under the Eighth Amendment, I would characterize that policy as "delegation running riot." *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553, 55 S. Ct. 837, 853 (1935) (Cardozo, J., concurring).

To put it simply, I'll return to *Sacramento* once more: The Eighth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848, 118 S. Ct. at 1718 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–1161 (1976)). Nor does the Eighth Amendment "purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* at 848, 118 S. Ct. at 1718 (quoting *Daniels v. Williams*, 474 U.S. 327, 332, 106 S. Ct. 662, 665 (1986)).

Today's majority reaches the correct disposition in reversing the District Court's denial of Brinley's motion for summary judgment and remanding with instructions that the Court enter summary judgment in Brinley's favor. Maj. Op. at 12. And the majority takes no position on "whether Hubbert, who litigated pro se in the district court, should be allowed to pursue state tort claims against Brinley on remand." *Id.* Accordingly, I write separately only to stress the importance of applying legal tests in the proper order and not relying on major assumptions when addressing constitutional claims.