No. 24-13756

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

JOSHUA HUBBERT

*Plaintiff-Appellee,*

*v.*

KENNY BRINLEY

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Florida
Case No. 23-cv-14272

---

# PLAINTIFF-APPELLEE JOSHUA HUBBERT'S COMBINED PETITION FOR REHEARING AND HEARING EN BANC

Danielle Hamilton
Olivia Christ*
Megan Ciaramitaro*
Katherine Saenz*
Daniel Villare*
Northwestern Pritzker School of Law
Federal Appellate Practice Clinic
375 E. Chicago Avenue, 8th Floor
Chicago, IL 60611
(312) 503-1486
danielle.hamilton@law.northwestern.edu

* Law student appearing pursuant to
Circuit Rule 46-11

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW #26152
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

## AMENDED CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

In accordance with Circuit Rule 26.1-1, the undersigned counsel of record certifies that the following list of persons and entities have an interest in the outcome of this case:

Barron, First Name Unknown (FDOC)

Beasley, Luke (Northwestern Pritzker School of Law)

Blaker, Jeffrey (Conroy Simberg)

Brinley, Kenny (St. Lucie County)

Bryner, Robert (FDOC)

Centurion Health Services

Christ, Olivia (Northwestern Pritzker School of Law)*

Ciaramitaro, Megan (Northwestern Pritzker School of Law)*

Conroy Simberg

Decker, Jonathan (Northwestern Pritzker School of Law)

Dixon, Ricky (FDOC)

Dyer, Jesse (Conroy Simberg)

Hamilton, Danielle (Northwestern Pritzker School of Law)

Hubbert, Joshua

Johnson, Matthew (Northwestern Pritzker School of Law)

Klein, A. Hinda (Conroy Simberg)

Martinez, Nicolas (Northwestern Pritzker School of Law)

Miller, CJ (Northwestern Pritzker School of Law)

Moore, K. Michael, U.S. District Judge

Northwestern Pritzker School of Law

Rights Behind Bars

Saenz, Katherine (Northwestern Pritzker School of Law)*

Villare, Daniel (Northwestern Pritzker School of Law)*

St. Lucie County, Florida

Weiss, Samuel (Rights Behind Bars)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ Danielle Hamilton

*Denotes added parties in Amended CIP

## CIRCUIT RULE 40-3 STATEMENT

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Farmer v. Brennan*, 511 U.S. 825 (1994); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Ort v. White*, 813 F.2d 318, 325 (11th Cir. 1987); *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009); *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).

/s/ Danielle Hamilton

Attorney of Record for Plaintiff-Appellee Joshua Hubbert

## TABLE OF CONTENTS


Circuit Rule 40-3 Statement ............................................................ v

Table of Contents ........................................................................ vi

Table of Citations ........................................................................ viii

Statement of Issues ........................................................................ 1

Statement of Proceedings ................................................................ 2

Statement of Facts .......................................................................... 4

I. Factual Background ...................................................................... 4

A. Hubbert is incarcerated within the Florida Department of Corrections and was assigned to a prison work assignment pursuant to a contract between the Department and St. Lucie County........................................................................ 4

B. St. Lucie County Officer Brinley was the only official in charge of the prison work assignment and the inmates....... 5

C. Brinley's improper operation of the backhoe caused a 50-pound slab of concrete to strike Hubbert, resulting in severe injuries............................................................................ 6

Argument ........................................................................................ 5

I. Introduction.................................................................................. 5

II. Legal Analysis........................................................................ 7

A. The Court's "co-worker" label was not alleged by Hubbert, unsupported in the record, and improperly viewed the record in Brinley's favor................................................................ 8

B. The right at issue, when properly defined, was clearly established. .................................................................... 11

1. Eighth Amendment principles clearly establish the right.....................................................................11

2. Precedent from the Eleventh Circuit clearly establishes the right..................................................13

3. Brinley's egregious conduct obviously violated the Constitution............................................................. 15

C. The Court's definition of the right at issue is contrary to Supreme Court precedent................................................ 17

Conclusion ...................................................................................... 20

Certificate of Compliance .............................................................. 22

Certificate of Service ...................................................................... 22

# TABLE OF CITATIONS

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................. 12, 19, 20
*Aguirre v. Seminole County*, 158 F.4th 1276 (11th Cir. 2025) .............11
*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................ 17
*Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) ........................................................................................... 20
*Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) .................. 12, 20
*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014) ... ...................................................................................15, 18
*City of Escondido, Cal. v. Emmons*, 586 U.S. 38 (2019) ....................... 17
*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) .......................................................................... 18
*Gilkerson v. Worthey*, 2008 WL 4194812 (N.D. Fla. Sept. 10, 2008) .. 10
*Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995) ................. 16
*Helling v. McKinney*, 509 U.S. 25 (1993) ............................................ 18
*Hope v. Pelzer*, 536 U.S. 730 (2002) .................................................... 14
*Hoyt v. Cooks*, 672 F.3d 972 (11th Cir. 2012) ...................................... ..9
*Kisela v. Hughes*, 584 U.S. 100 (2018) ................................................ 17
*Lane v. Philbin*, 835 F.3d 1302 (11th Cir. 2016) ................................. 15
*Lewis v. City of W. Palm Beach*, 561 F.3d 1288 (11th Cir. 2009) .........9
*Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019) ........................... 14
*May v. Hetzel*, 630 F. App'x 994 (11th Cir. 2015) .................................12
*Ort v. White*, 813 F.2d 318 (11th Cir. 1987) .........................................12
*Rich v. Dollar*, 841 F.2d 1558 (11th Cir. 1988) .................................... 11
*Saucier v. Katz*, 533 U.S. 194 (2001) ................................................... 18
*Tolan v. Cotton*, 572 U.S. 650 (2014) ....................................................11
*United States v. Lanier*, 520 U.S. 259 (1997) ...................................... 14
*Wilson v. Layne*, 526 U.S. 603 (1999) .................................................... 8

## STATEMENT OF ISSUES

1. Did the Court contravene Supreme Court and Eleventh Circuit precedent when, prior to its clearly established analysis, its defined the right at issue viewing the record in the light most favorable to Brinley—the movant—instead of Hubbert—the nonmovant—and too narrowly?
2. When properly defined, was the right issue clearly established at the time of Brinley's alleged conduct?

## STATEMENT OF PROCEEDINGS

On August 28, 2023, Hubbert, acting pro se, sued Brinley and others in the Southern District Court of Florida alleging Eighth Amendment violations. Doc. 5; Doc. 10. On February 12, 2024, the district court screened Hubbert's amended complaint pursuant to 28 U.S.C. § 1915(e) and allowed his Eighth Amendment claim against only Brinley to proceed. Doc. 11.

On May 13, 2024, Brinley moved for summary judgment on the grounds of qualified immunity. Doc. 23. On October 31, 2024, the district court denied Brinley's summary-judgment motion, finding that because the record could support a jury finding that Brinley violated Hubbert's clearly established right "to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment," Brinley was not entitled to qualified immunity. Doc. 32 at 10–11.

On November 15, 2024, Brinley timely appealed, arguing that the right at issue was not clearly established at the time of his alleged conduct. Doc. 34; Appellant's Br. at 13. In response to this argument, Hubbert argued that this Court should affirm the district court's correct

finding that the Eighth Amendment right was clearly established. Appellee's Br. at 1–2.

On September 3, 2026, this Court held that because the "Eighth Amendment right for a prisoner to be free from a co-worker's recklessness" was not clearly established at the time of Brinley's alleged conduct, Brinley was entitled to qualified immunity. Maj. Op. at 2, 8. This Court reversed and remanded with instructions to enter summary judgment in Brinley's favor. *Id.* at 12.

## STATEMENT OF FACTS

The following facts are those found by the district court viewing the record in Hubbert's favor:

### I. Hubbert is incarcerated within the Florida Department of Corrections and was assigned to a prison work assignment pursuant to a contract between the Department and St. Lucie County.

Plaintiff-Appellee Joshua Hubbert was incarcerated at Martin Correctional Facility within the Florida Department of Corrections (FDOC). Doc. 32 at 8. During Hubbert's incarceration at Martin, FDOC contracted with St. Lucie County to provide inmate labor for construction projects. *Id.* Hubbert and other inmates' prison work assignment was to break up and remove concrete from the premises in a four-day project. *Id.* at 7. FDOC officers instructed Hubbert that if he did not complete this work, he would be punished with solitary confinement. *Id.* at 8.

St. Lucie County was responsible for providing tools and equipment to inmates and ensuring inmates were equipped with personal protective equipment. *Id.* at 7. The County agreed to provide supervision and guidance for inmate work assignments—like Hubbert's

work assignment in this case—that require a permit or technical assistance. Doc. 24-1 at 7; Doc. 27 at 1–2.

Yet, Hubbert was not provided a hard hat or any other safety equipment. Doc. 32 at 2, 8. Nor was he trained in demolition or applicable safety procedures, despite being ordered to use dangerous tools such as saws and jackhammers on concrete. *Id.* at 8.

## I. St. Lucie County Officer Brinley was the only official in charge of the prison work assignment and the inmates.

On September 23, 2019, FDOC officers instructed Hubbert to follow the orders of Defendant-Appellant Kenny Brinley, a St. Lucie County officer. *Id.* at 1. If Hubbert did not follow Brinley's commands, he would be sent to confinement for disobeying a verbal order. *Id.* at 1, 8.

Brinley assembled a group of inmates, including Hubbert, to break up concrete. *Id.* 1–2, 8. When the inmates were having trouble breaking up one of the "very large" concrete slabs, Brinley used a backhoe with a fork attachment as a demolition tool. *Id.* 1–2, 8. Brinley instructed all inmates to "stand back" while he attempted to pry the concrete with the backhoe. *Id.* 1, 8. He wedged the backhoe's fork attachment under the

concrete slab and five large pieces of concrete, weighing approximately fifty pounds each, broke apart and flew through the air. *Id.* 1–2, 8. No FDOC officers were present *at any time*. *Id.* at 8. Brinley was the *only* authority supervising the inmates and directly communicating with them. *Id.*

## II. Brinley's improper operation of the backhoe caused a 50-pound slab of concrete to strike Hubbert, resulting in severe injuries.

One of the fifty-pound pieces of concrete that flew through the air hit Hubbert in the head and back, severely injuring Hubbert in the head, knees, and left shoulder. *Id.* at 2. The concrete left lasting injuries, including a depression in Hubbert's skull, a scar across his shoulder, and persistent muscular problems. Doc. 28 at 4.

## ARGUMENT

### I. Introduction

Joshua Hubbert, acting pro se, sued Officer Kenny Brinley in the Southern District Court of Florida after Brinley injured him during a demolition prison work assignment while Hubbert was incarcerated within the Florida Department of Corrections. At every stage of this litigation, Hubbert, first representing himself in the district court and then represented by pro bono counsel on appeal, alleged that he was forced to perform the demolition work as punishment under the supervision of Brinley and Brinley alone.

Yet when this Court reversed the district court's denial of summary judgment and held Brinley was entitled to qualified immunity, the sole basis for its decision was that Hubbert's right "to be free from a co-worker's recklessness" was not clearly established at the time of Brinley's alleged conduct.

The Court's definition of the right at issue in a manner never alleged by Hubbert—the nonmovant—and in Brinley's—the movant's—favor and too narrowly contravenes Supreme Court and Eleventh Circuit precedent and should be reversed.

## II. Legal Analysis

The Supreme Court has held that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Here, this Court determined that the right at issue was an Eighth Amendment right "to be free from a co-worker's recklessness." Maj. Op. at 8. From there, it determined that this right was not clearly established, and therefore Brinley was entitled to qualified immunity. *Id.*

By defining the right at issue in this manner, the Court improperly resolved a material factual dispute in Brinley's—rather than Hubbert's—favor. This manifest error of law infected the Court's analysis of whether the right was clearly established. Had the Court defined the right at issue properly, it should have held that the right was clearly established.

### A. The Court's "co-worker" label was not alleged by Hubbert, unsupported in the record, and improperly viewed the record in Brinley's favor.

In reviewing the district court's summary judgment order, this Court was required to view the record and grant reasonable inferences

in the light most favorable to Hubbert, the nonmoving party. *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). In the qualified-immunity context, the Court was required to determine whether the plaintiff's version of the facts, if proven, established a violation of clearly established law. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).

The Court's finding that Brinley was merely Hubbert's "co-worker" or "fellow worker" violates these principles. None of Hubbert's allegations, which the Court must have accepted as true, support that conclusion. According to Hubbert, he had to follow Brinley's orders, or he would be sent to confinement. Doc. 32 at 8. Furthermore, at the time of the incident, Brinley was the only authority present, and the only officer instructing the inmates, further evincing his position of authority. *Id.*; *see also* Appellees' Br. at 30. Indeed, as the Court's opinion recognizes, Brinley exercised that authority: he instructed Hubbert where to stand and ordered him to "stand back" immediately prior to injuring him. Maj. Op. at 4. In light of these facts, the district court correctly concluded that Brinley was a county official who directed

and supervised Hubbert and who gave instructions that Hubbert had to follow. Doc. 32 at 1, 11.

This Court's recounting of the facts provides no support at all for its "co-worker" characterization. And that's for good reason: the record as the Court must have accepted it contains none. The opinion is more notable for what it omits, which is any mention of the facts that make clear Hubbert was in the custody and control of Brinley for all intents and purposes. While the Court's opinion states that "prisoners were required to work alongside county employees to help deconstruct and dispose of the concrete slab," Maj. Op. at 3, it elides any discussion of the facts that show Hubbert was working *under the control* of Brinley, not "alongside" him. Doc. 32 at 1–2, 8–9, 11.

The facts Hubbert alleged would easily permit a jury to find that Hubbert was an inmate ordered, under pain of punishment, to perform work under the supervision of Brinley and Brinley alone. This Court was required to credit those allegations. *Lewis*, 561 F.3d at 1291. And those allegations provide no basis for calling Brinley a mere "co-worker" of Hubbert's. When this Court did so, it committed a grave legal error in contravention of Supreme Court and Eleventh Circuit precedent. *See*

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."); *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1297 (11th Cir. 2025) ("'[A] genuine fact issue as to what conduct the defendant engaged in would preclude a grant of summary judgment based upon qualified immunity.'" (alteration in original) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1565 (11th Cir. 1988)).

**B. The right at issue, when properly defined, was clearly established.**

Correctly defined, Hubbert's right was the right of a prisoner, when forced to work, to not be subjected to seriously unsafe working conditions. That right was clearly established at the time of Brinley's conduct based on Eighth Amendment principles and under Eleventh Circuit precedent.

**1. Eighth Amendment principles clearly establish the right.**

The principle that inmates have a right to be free from conditions of confinement, including workplace conditions, that pose a substantial risk of serious harm is well-established. That principle—that he could

not place Hubbert in the grave danger he did—is all that Brinley needed to know.

The Eighth Amendment does not guard only against oppressive judicial punishment or rank abuse by prison officials; it sweeps far wider. It requires that prisoners receive "humane conditions of confinement" and that public officials "'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Following *Farmer* and other Supreme Court cases, this Court has extended the Eighth Amendment's protections to all areas of inmate life. *See, e.g., May v. Hetzel*, 630 Fed. Appx. 994, 996 (11th Cir. 2015) (medical context); *Brooks v. Warden*, 800 F.3d 1295, 1303–04 (11th Cir. 2015) (sanitation context).

There is no serious question those protections extend to prisoners forced to work outside the prison walls. This Court in *Ort v. White* took that principle as a given. 813 F.2d 318, 325 (11th Cir. 1987). Although the Court there ultimately found that the prison guard's behavior did not constitute cruel and unusual punishment, it did *not* doubt whether the Eighth Amendment could be applied to the treatment of prisoners

on work assignments. *Id.* Indeed, courts within the Eleventh Circuit do not appear to question that "[p]rison work assignments are considered conditions of confinement subject to scrutiny under the Eighth Amendment." *Gilkerson v. Worthey*, 2008 WL 4194812, at *3 (N.D. Fla. Sept. 10, 2008).

If the Constitution plainly requires public officials entrusted with the custody of inmates—whether within or without prison walls—to take reasonable measures to guarantee their safety, surely it must be evident that such an official cannot recklessly subject them to serious harm, as Brinley did here.

**2. Precedent from the Eleventh Circuit clearly establishes the right.**

The district court found that Eleventh Circuit precedent clearly established the right of a prisoner, when forced to work, to not be subjected to seriously unsafe working conditions. Doc. 32 at 11. This Court held that the cases cited by the district court were too factually distinct to clearly establish the right to be free from a co-worker's recklessness. Maj. Op. at 8, 9. In addition to defining the right incorrectly, this Court also erred when it held the factual similarities

needed to establish a right to an exacting standard that the Supreme Court has never required.

The Supreme Court has made clear that prior cases need not be "fundamentally similar" to a case for purposes of the clearly established inquiry. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Indeed, even when there are "notable factual distinctions between the precedents relied on and the cases before the court" or when a case contains "novel factual circumstances," the court may still find that "the decisional law may apply with obvious clarity to the specific conduct in question." *Id.* at 740–41 (quoting *United States v. Lanier*, 520 U.S. 259, 269, 271 (1997)).

At least two cases clearly establish the right at issue in the Eleventh Circuit. In *Marbury v. Warden*, the Court reasoned that a prison official cannot be "deliberately indifferent to a substantial risk of harm." 936 F.3d 1227, 1236 (11th Cir. 2019) (emphasis omitted). It held in no uncertain terms that "prison officials must take reasonable measures to guarantee the safety of the inmates, and a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Id.* at 1233 (alteration

omitted) (quotation marks omitted) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)). While *Marbury* involves an inmate-on-inmate attack, the factual distinction does not negate the notice to Brinley that he must take reasonable measures to guarantee the safety of inmates and cannot be deliberately indifferent to a substantial risk of harm that an inmate could suffer an injury.

In *Caldwell v. Warden, FCI Talladega*, the Court held that a prison official must protect an inmate from the risk of harm. 748 F.3d 1090, 1102 (11th Cir. 2014). The Court further held that a prison official violates the Eighth Amendment when they know of a substantial risk and do not act, because that conduct constitutes failure to protect. *Id.* Thus, *Caldwell* put Brinley on notice that a prison official has a duty to protect inmates from serious harm if they are aware of such risk.

**3. Brinley's egregious conduct obviously violated the Constitution.**

While this Court concluded that the Eighth Amendment does not clearly establish a right to be free from a co-worker's recklessness, it still recognized "[i]t is possible, of course, that a prison official might require a prisoner to do such clearly dangerous and injurious work that a constitutional violation is obvious." Maj. Op. at 12. This is exactly the

conduct that Hubbert alleged Brinley engaged in, and precisely the type of egregious conduct the Supreme Court and Eleventh Circuit have held is obviously unconstitutional.

Hubbert alleged the following with respect to Brinley's conduct, which the Court was required to accept: Brinley exercised institutional control over Hubbert. Doc. 32 at 1–2, 8–9, 11. Brinley was the only prison authority who personally operated the machinery and gave commands to the inmates during the incident in question. *Id.* at 1. Hubbert could not simply leave the worksite or refuse the unsafe assignment without being punished. *Id.* at 8. He received no instruction on where to stand and was offered no protective equipment or training. *Id.* Brinley operated heavy machinery to tear up rebar-laced concrete that was too heavy for the inmates to lift while Hubbert was not even provided a hard hat and stood five feet away. Doc. 26 at 6; Doc. 11 at 2. Brinley's own words to the inmates to "stand back" show he understood the risk of serious injury or death. Doc. 32 at 8–9.

In sum, the Court's characterization of this incident as a "workplace accident" between co-workers is contrary to Hubbert's version of the facts and wholly unsupported in the record. Maj. Op. at

12. Viewed in the light most favorable to Hubbert, Brinley's conduct was so egregious that its unconstitutionality was obvious.

**C. The Court's definition of the right at issue is contrary to Supreme Court precedent.**

The Supreme Court has given clear guidance on how to define a right for purposes of conducting the clearly established inquiry. At one extreme, the Court has repeatedly told courts "not to define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (ellipses in original) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). At the other extreme—and relevant here—a court is not required to define the right with such specificity that "the very action in question has been previously held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Rather, the right must only be defined with enough specificity that reasonable officials must be able to "anticipate when their conduct may give rise to liability for damages." *Id.* at 639–40 (quoting *Davis*, 468 U.S. 183, 195 (1984)); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("If the law did not put the office on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

The Court's characterization of Brinley as a mere co-worker flies in the face of the Supreme Court's admonishment that a right must not be defined too narrowly. The Court's definition of the right at issue is too narrow in two important ways.

First, nowhere in Hubbert's version of the facts does he describe Brinley as a "co-worker" or "fellow worker." By contrast, he describes Brinley as the official in charge of the work assignment. Doc. 32 at 1–2, 8, 11; Doc. 24-1 at 7; Doc. 27 at 1–2. In *Helling v. McKinney*, the Supreme Court explained that the Constitution imposes a duty on prison officials to "assume some responsibility for ... [the] safety and wellbeing" of those in its custody. 509 U.S. 25, 31–32 (1993) (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199–200 (1989)). While a mere co-worker may have no responsibility to inmates, under *Helling*, an official with authority to supervise, order, and instruct inmates does. *See also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (imposing a duty on officials to "take reasonable measures to guarantee the safety of the inmates.").

Second, this Court's definition of the right also ignores that Hubbert was given a *prison* work assignment as a form of punishment.

Doc. 32 at 8. Because Hubbert was incarcerated and forced to work pursuant to that incarceration, the Eighth Amendment's prohibition against cruel and unusual punishment is implicated—yet the right articulated by the Court elides the punitive dimension of Hubbert's treatment. *See Farmer*, 511 U.S. at 832 (holding the Eighth Amendment scrutinizes prison conditions).

The Court's definition of the right as a right to be free from "a co-worker's recklessness" ignores not only that Brinley and Hubbert were not co-workers, but also that Hubbert was forced into the position he was in solely because he was incarcerated. Maj. Op. at 8. Because Hubbert was forced to work under the threat of still further punishment, the proper question should be whether, in that situation, the Constitution protected Hubbert from a substantial risk of serious harm by the public officials entrusted with his custody and care, which Brinley was. Doc. 32 at 8. The Supreme Court and this Court's Eighth Amendment case law answer that question affirmatively. *See, e.g., Farmer*, 511 U.S. at 825 (holding that the Eighth Amendment is violated when officials know that prison conditions are unsafe and pose a risk of serious harm); *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th

Cir. 2015) (holding that unhygienic and unsafe prison conditions created by officials violate the Eighth Amendment when not justified by "serious safety concern"); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) (holding that prison conditions are scrutinized under the Eighth Amendment and are violated when an official does not protect an inmate from serious harm); *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579 (11th Cir. 1995) (holding that a prison official violates the Eighth Amendment by failing to control conditions of confinement.)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests a rehearing and hearing en banc and further requests that the district court's denial of Brinley's motion for summary judgment be affirmed.

Respectfully Submitted,

/s/ Danielle Hamilton

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 40(b)(1) because, excluding the parts of this document exempted by Fed. R. App. P. 32(f), this document contains 3522 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century in a 14-point font size.

/s/ Danielle Hamilton

## CERTIFICATE OF SERVICE

I, Danielle Hamilton, counsel for Joshua Hubbert, certify that, on September 24, 2026, a copy of the attached brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to have been served have been served.

/s/ Danielle Hamilton

**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

---

No. 24-13756

---

JOSHUA M. HUBBERT,

*Plaintiff-Appellee,*

*versus*

KENNY BRINLEY,

St. Lucie County Supervisor of FDOC Inmate workers,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:23-cv-14272-KMM

---

Before NEWSOM, BRASHER, and TJOFLAT, Circuit Judges.

BRASHER, Circuit Judge:

Joshua Hubbert, a Florida prisoner proceeding pro se,[1] sued Kenny Brinley, a county employee with whom he had worked on a demolition project. Hubbert was injured when Brinley used a backhoe to uproot a massive concrete slab, causing a large chunk to fly through the air and hit Hubbert in the back of the head. Hubbert alleged that Brinley's conduct violated the Eighth Amendment's prohibition on "cruel and unusual punishments." Brinley sought summary judgment on the grounds that he hadn't violated Hubbert's constitutional rights and, in any event, that he was entitled to qualified immunity. In support of the latter contention, he argued that the law underlying Hubbert's claim wasn't "clearly established" at the time of the incident in question. The district court denied Brinley's motion, and he appealed.

We assume, without deciding, that Brinley's conduct violated a constitutional right. But after we reduce the relevant right to its proper level of generality, we conclude that that right was not clearly established at the time of its violation. Brinley was not "on notice that [his] conduct [was] unlawful," *Saucier v. Katz*, 533 U.S. 194, 206 (2001), and he is entitled to qualified immunity. We therefore reverse and remand with instructions that the district court enter summary judgment in Brinley's favor.

---

[1] The nonprofit Rights Behind Bars and Northwestern Law School's appellate advocacy clinic represented Hubbert pro bono in this Court. We thank them for their service.

**I.**

Because this appeal arises out of Brinley's summary judgment motion, we recount the facts in the light most favorable to Hubbert, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In 2019, Hubbert and several other prisoners were assigned to perform manual labor on a project for St. Lucie County. To make way for a new building that it planned to erect on a piece of public property, the county needed to remove an existing storage shed and the steel-reinforced concrete slab beneath it. Because doing so would be labor-intensive, the county requested the assistance of inmates pursuant to its contract with the Florida Department of Corrections. The prisoners were required to work alongside county employees to help deconstruct and dispose of the concrete slab.

Hubbert says that he wasn't well-prepared for the job. He wasn't given any demolition-related training or made aware of any safety procedures. And although the county was contractually obligated to furnish tools and protective equipment, Hubbert contends that he wasn't issued any.

For the most part, the workers were able to break up the concrete with saws and jackhammers and carry the smaller shards to a nearby dumpster. But the reinforced slab sometimes refused to yield to ordinary tools. As a result, Brinley, the supervising county employee, operated a backhoe fitted with a fork attachment to help dislodge and move some of the larger pieces.

USCA11 Case: 24-13756 Document: 45-1 Date Filed: 09/03/2026 Page: 33 of 49



At one point, when several inmates couldn't lift a particularly big segment of the slab, Brinley decided to use the backhoe to pry it out of the ground. Just before doing so, he told everyone to "stand back." Although Brinley didn't specify a distance, Hubbert alleges that before the incident he was instructed to keep approximately 5–10 feet away from the backhoe. In any event, not long after Brinley issued his warning, "his effort to pry the piece loose resulted in a shattering burst" and chunks of concrete flew through the air. A piece hit Hubbert in the back of the head, knocking him to the ground.

Hubbert sustained serious and lasting injuries. He suffered a depression in his skull, a scar across his shoulder, and muscular problems that have persisted since the incident. He also continues to deal with neurological issues.

Hubbert sued Brinley in federal district court. Proceeding under 42 U.S.C. § 1983, Hubbert alleged that Brinley had shown "deliberate indifference" to his physical safety in violation of the Eighth Amendment. Brinley moved for summary judgment on the grounds (1) that his conduct didn't violate the Eighth Amendment and (2) that he was in any event entitled to qualified immunity because the constitutional right underlying Hubbert's claim wasn't "clearly established" at the time of the accident. The district court denied Brinley's motion. The court first found that there were genuine issues of material fact regarding whether the county had provided safety equipment, how far inmates were told to stand from the backhoe, and whether the concrete block "exploded" and sent

USCA11 Case: 24-13756 Document: 45-1 Date Filed: 09/24/2026 Page: 34 of 48



50-pound pieces flying. *See* Order Denying Def.'s Mot. For Summ. J. at 9–10, Dkt. No. 32. The court further held that it was clearly established at the time of the incident that prisoners had a right "to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." *Id.* at 11.

Brinley appealed.

**II.**

As an initial matter, we have appellate jurisdiction under the collateral order doctrine, *see Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020), because Brinley's appeal turns on a purely legal question—namely, "whether the facts alleged by [Hubbert] support a claim of violation of clearly established law," *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985) (citation modified). And we review a district court's denial of summary judgment *de novo*. *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021).

A government official sued for damages under section 1983 may assert that he is entitled to qualified immunity from suit. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because it is undisputed here that Brinley was performing the sort of discretionary function to which qualified immunity applies, Hubbert bears the burden of

USCA11 Case: 24-13756 Document: 42-1 Date Filed: 09/03/2026 Page: 35 of 48



demonstrating both (1) that Brinley violated his Eighth Amendment rights and (2) that those rights were clearly established at the time of the alleged violation. *Id.* at 232.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Clearly established rights cannot be defined "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). Instead, they must be narrowly construed and "defined with specificity" *Id.* In short, the "clearly established" standard aims to "ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier*, 533 U.S. at 206.

In our circuit, plaintiffs can show that a right is clearly established in one of three ways. First, they can point to a "materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose" to demonstrate that existing precedent has clearly established the law. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). Second, they can demonstrate that a "broader, clearly established principle" from existing case law "should control the novel facts in this situation." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). *See also Powell*, 25 F.4th at 920. Or third, they can convince us that their "case fits within the exception of conduct which so obviously violates

[the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159. Under methods (2) and (3), we look for "obvious clarity"—"a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Powell*, 25 F.4th at 920. Cases finding clearly established rights under one of the "obvious clarity" methods are "rare and don't arise often." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020).

**III.**

For purposes of this appeal, we assume, without deciding, that Brinley's conduct—operating the backhoe to break up the piece of concrete with co-workers nearby—violated Hubbert's constitutional right to be free from cruel and unusual punishment. But, after careful review, we nonetheless conclude that Hubbert has failed to demonstrate that the right in question was clearly established at the time of that violation. Accordingly, Brinley is entitled to qualified immunity.

As mentioned above, the district court determined that Hubbert had a clearly established right "to be free from conditions of confinement, including workplace conditions, which result in cruel and unusual punishment under the Eighth Amendment." Order Denying Def.'s Mot. For Summ. J. at 9–10, Dkt. No. 32. But this description of Hubbert's right is framed "at a high level of generality," which sweeps too broadly for purposes of our qualified immunity analysis. *Emmons*, 586 U.S. at 42. After all, "[q]ualified immunity is no immunity at all if 'clearly established' law can simply

be defined as the right to be free from [a constitutional violation]." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015). We must therefore define the right "with specificity" before we can determine whether it was clearly established at the time of its alleged violation. *Emmons*, 586 U.S. at 42.

Defined at the proper level of generality, Hubbert's asserted right amounts to an Eighth Amendment right for a prisoner to be free from a co-worker's recklessness. We conclude that Hubbert fails to demonstrate that such a right was clearly established under any of our three approaches at the time of his injury.

*A.*

Starting with the first approach, no existing case law is sufficiently similar to this case to create a clearly established right to be free of risks associated with a co-worker's recklessness. The district court and Hubbert both point to precedents that they contend create such a right, but upon examination, we cannot say that any of these precedents establish such a right.

The district court identified four precedents—*Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015); and *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019)—in ruling that Brinley violated a clearly established right. But none of those cases are materially similar to this case. Specifically, *Farmer* is about a transgender inmate who was assaulted and raped by his cellmate; there, the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other

prisoners." 511 U.S. at 832. *Ort* considered whether temporarily withholding water from an inmate when they refused to work violated the Eighth Amendment; there, we held that such punishment did not inflict "unnecessary and wanton" pain and therefore did not violate any constitutional rights. 813 F.2d at 321. *Brooks* weighed in on general prison cleanliness conditions; there, we reiterated that inmates have a clearly established right to "not be confined in conditions lacking basic sanitation." 800 F.3d at 1303. And finally, *Marbury* is another prison violence case, where we reiterated that, in the context of inmate-on-inmate violence, prison officials "must take reasonable measures to guarantee the safety of inmates." 936 F.3d at 1233. None of those cases resemble this one.

Hubbert attempts to bolster the district court's holding with additional caselaw, which he claims is sufficiently factually similar to this case to create a clearly established right, but his attempt also fails. Specifically, Hubbert cites *Caldwell v. Warden*, 748 F.3d 1090 (11th Cir. 2014), for the proposition that prisoners have a clearly established right to safe working conditions. But *Caldwell* is yet another case about inmate-on-inmate violence, and it is therefore not factually analogous to this case. 748 F.3d at 1099. He also cites three district court cases and seven out-of-circuit cases that he claims support his position. But, as *Powell* reminds us, under method (1), a clearly established right may be shown only "by pointing to a materially similar decision of the *Supreme Court*, of *this Court*, or of the *supreme court of the state in which the case arose*." 25 F.4th at 920 (emphasis added). Hubbert cannot demonstrate clearly established law under method (1).

*B.*

Turning to the second approach, we are similarly not convinced that a "broader, clearly established principle" from existing case law creates a clearly established Eighth Amendment right to be free from risks stemming from a co-worker's recklessness. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). *See also Powell*, 25 F.4th at 920.

Hubbert argues that inmates enjoy a "long recognized" right to "safe and humane prison conditions of confinement." We agree. Supreme Court precedent and our own caselaw make clear that prison officials may not subject inmates to conditions that deprive them of basic human needs or intentionally expose them to serious dangers arising from incarceration. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (food and other basic necessities); *Farmer*, 511 U.S. at 832 (protection from inmate-on-inmate violence); *Brooks*, 800 F.3d at 1305 (11th Cir. 2015) (basic sanitation). The conditions of confinement cases reflect the broad principle that, because inmates are confined and dependent on the state for their basic needs and safety, the Eighth Amendment prohibits inhumane conditions or punishment, as measured against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

But that broad principle does not clearly establish the unlawfulness of Brinley's conduct in this case. Brinley is not the prison official who ordered Hubbert to work on this construction project

as part of his conditions of confinement; he was a fellow worker and site supervisor. The conditions of confinement principle is about risks and deprivations that arise from incarceration itself—the threat of other inmates, the need to rely on prison officials for food and medical care, etc. The threat of injury from a co-worker's recklessness, by contrast, is not especially related to being an inmate or to the conditions of confinement. And, as the Supreme Court has cautioned, an accidental injury is not "to be characterized as wanton infliction of unnecessary pain" for purposes of the Eighth Amendment. *Estelle*, 429 U.S. at 105.

We cannot say that clearly established law extends the conditions of confinement principle to allow a prisoner to sue a co-worker based on that co-worker's recklessness. Accordingly, because the conditions of confinement principle did not provide Brinley "notice that [his] conduct [was] unlawful," Hubbert's attempt to demonstrate a violation of clearly established law under method (2) fails. *Saucier*, 533 U.S. at 206.

*C.*

Lastly, we are not convinced that this "case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159. As we recently reiterated, "[t]he Constitution sets the boundaries for federal liability, not the outer limits of accountability." *Hughes v. Locure*, 166 F. 4th 121, 130 (11th Cir. 2026). The Eighth Amendment prohibits "cruel and unusual punishments"—not a co-worker's

USCA11 Case: 24-13756 Document: 45 Date Filed: 09/24/2026 Page: 41 of 48



recklessness. It is possible, of course, that a prison official might require a prisoner to do such clearly dangerous and injurious work that a constitutional violation is obvious. But the mere fact that an injured worker is an inmate does not transform a workplace accident into an Eighth Amendment violation. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (noting that not every injury "inflicted by governmental negligence" is redressable under the Constitution). As a result, we cannot say that generalized Eighth Amendment principles create a clearly established right to be free from the kind of co-worker recklessness that resulted in Hubbert's injury in this case—and much less with the "obvious clarity" that method (3) demands. *See King*, 961 F.3d at 1146.

## IV.

We do not decide whether Hubbert, who litigated pro se in the district court, should be allowed to pursue state tort claims against Brinley on remand. We **REVERSE** the district court's denial of qualified immunity and **REMAND** for further proceedings consistent with this opinion.

NEWSOM, Circuit Judge, concurring:

I concur in the Court's decision and its written opinion. Charitably giving Hubbert the benefit of the doubt, the Court "assume[s], without deciding, that Brinley's conduct—operating the backhoe to break up the piece of concrete with co-workers nearby—violated Hubbert's constitutional right to be free from cruel and unusual punishment." Maj. Op. at 7. Speaking only for myself, I'll just say that I'm quite confident it did not. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"); *Wade v. McDade*, 106 F.4th 1251, 1269–70 (11th Cir. 2024) (en banc) (Newsom, J., concurring) ("Just as a parent can't accidentally punish his or her child, a prison official can't accidentally—or even recklessly—'punish' an inmate.").

TJOFLAT, Circuit Judge, Specially Concurring:

Today's majority opinion gives Hubbert the benefit of the doubt: it "assume[s] without deciding, that Brinley's conduct . . . violated Hubbert's right to be free from cruel and unusual punishment." Maj. Op. at 7. In concurring with the majority, Judge Newsom is "quite confident" that Brinley's conduct did not violate the Eighth Amendment. Newsom Concurrence at 1. I would go further. The Eighth Amendment does not cover Brinley's conduct, and we cannot properly assume its protections apply to the facts in this case.

**I.**

The contract between the Florida Department of Corrections ("Department of Corrections") and the St. Lucie County Board of Commissioners (the "County") "provided for the respective rights, duties, obligations, and responsibilities of both St. Lucie County and the Florida Department of Corrections" when organizing inmate work squads to assist with County work. According to the undisputed facts in this case, the parties proceeded under the following arrangement:

> • Pursuant to Florida law, the Department of Corrections was responsible for supervision of the work squads.
>
> • The Department of Corrections kept physical custody of the vehicles, trailers, and all tools, equipment, supplies, materials and personal work items furnished by the County.

USCA11 Case: 24-13756 Document: 42 Date Filed: 09/24/2025 Page: 44 of 48



> • The County communicated what work was to be performed to the Department of Corrections officers, and the Department of Corrections officers secured the inmates required for the specific work.
>
> • While at the worksite, the County communicated the direction of the work to the Department of Corrections officers, who then communicated those directions to the inmates.
>
> • The Department of Corrections did not permit the County to speak with or handle the inmates. The County only communicated with the Department of Corrections Officers.

From these details, it is clear the parties intended for the Department of Corrections officers to remain responsible for inmates' safety at all times.

**II.**

In relevant part, the Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. It is settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993)). The Eighth Amendment also imposes duties on prison officials, who must "provide humane conditions of confinement . . . ensure that inmates receive ade-

USCA11 Case: 24-13756 Document: 41 Date Filed: 09/23/2025 Page: 46 of 49



quate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832, 114 S. Ct. at 1970.

In *Farmer v. Brennan*, the Supreme Court considered a civil suit brought by an inmate alleging prison officials violated the Eighth Amendment by their deliberate indifference to the inmate's safety. 511 U.S. at 829, 114 S. Ct. at 1974. In adopting a subjective recklessness standard to govern Eighth Amendment claims, the Court stated: "The question under the Eighth Amendment is whether *prison officials*, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 843, 114 S. Ct. at 1982 (quoting *Helling*, 509 U.S. at 35, 113 S. Ct. at 2481) (internal quotation marks omitted) (emphasis added).

When Department of Corrections officers transported Hubbert to the jobsite on the day of the accident, the officers turned the jobsite into Hubbert's place of confinement for Eighth Amendment purposes. It cannot be said that Brinley, a County employee, was responsible for the conditions of Hubbert's confinement in the sense that Brinley had an Eighth Amendment duty not to subject Hubbert to cruel and unusual punishment. The Eighth Amendment duty to maintain Hubbert's confinement must have instead remained with the Department of Corrections officers.

Imagine that, instead of working alongside Hubbert at a jobsite, Brinley was a worker that the Department of Corrections contracted with to do construction work at one of its prisons. As

USCA11 Case: 24-13756 Document: 42 Date Filed: 09/04/2025 Page: 17 of 19



Brinley completed his construction work, the Eighth Amendment would not attach an independent duty to care for the prisoners in the Department of Corrections and its officers' custody. Instead, Brinley's responsibility, like that of any potential tortfeasor, would be to perform his assigned work with due care. Whether or not Brinley was also a County employee or acted "under color of law" for section 1983 purposes would be irrelevant to the constitutional question of duty under the Eighth Amendment. Indeed, the Eighth Amendment would not reach Brinley's conduct at all.

So too here. In the instant case, Hubbert may only properly bring a common law tort claim against Brinley for negligence. As in *Farmer*, the relevant question as applied to Hubbert's Eighth Amendment claim "is whether prison officials, acting with deliberate indifference, exposed [Hubbert] to a sufficiently substantial risk of serious damage to his future health." *Farmer*, 511 U.S. at 843, 114 S. Ct. at 1982. Brinley's conduct cannot be properly understood as the conduct of a prison official solely because he operated a forklift alongside inmates while employed by the County.

This distinction does not foreclose Hubbert from potentially pursuing his claim as a state tort action. Brinley's act or omission "might well be something society wishes to discourage," and where harm occurred to Hubbert, "society might well wish to assure compensation." *Id.* at 837–38, 114 S. Ct. at 1979. But, echoing *Farmer* again, "the common law reflects such concerns when it imposes tort liability on a purely objective basis." *Id.* Brinley's "failure to alleviate a significant risk that he might have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" *Id. See Wilson v. Seiter*, 501 U.S. 294, 300, 111 S. Ct. 2321, 2325 (1991) ("The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century.").

**III.**

In "assum[ing], without deciding, that Brinley's conduct violated a constitutional right," Maj. Op. at 4, today's majority risks taking a step toward realizing the Supreme Court's concern about 42 U.S.C. § 1983 claims "demot[ing]" the Constitution into "a font of tort law." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 1717 n.8, (1998). To be clear, I do not read today's majority as hiding the ball or acting in bad faith in reaching qualified immunity and reversing the District Court's ruling. Indeed, because the District Court ruled on qualified immunity below, the issue is squarely before us on appeal. Instead, I write to clarify that today, as ever, "liability for negligently inflicted harm is categorically beneath the threshold" of the Eighth Amendment. *Id.* at 849, 118 S. Ct. at 1718. Insofar as Brinley, by working alongside inmates, can be said to have assumed the Department of Corrections officers' duties to maintain the conditions of inmates' confinement under the Eighth Amendment, I would characterize that policy as "delegation running riot." *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553, 55 S. Ct. 837, 853 (1935) (Cardozo, J., concurring).

To put it simply, I'll return to *Sacramento* once more: The Eighth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." 523 U.S. at 848, 118 S. Ct. at 1718 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–1161 (1976)). Nor does the Eighth Amendment "purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* at 848, 118 S. Ct. at 1718 (quoting *Daniels v. Williams*, 474 U.S. 327, 332, 106 S. Ct. 662, 665 (1986)).

Today's majority reaches the correct disposition in reversing the District Court's denial of Brinley's motion for summary judgment and remanding with instructions that the Court enter summary judgment in Brinley's favor. Maj. Op. at 12. And the majority takes no position on "whether Hubbert, who litigated pro se in the district court, should be allowed to pursue state tort claims against Brinley on remand." *Id.* Accordingly, I write separately only to stress the importance of applying legal tests in the proper order and not relying on major assumptions when addressing constitutional claims.